**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose Jesus LIRA–BARRAZA,**
**Defendant–Appellant.**

**Civ. A. No. 88–5161.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1989.

Decided Feb. 28, 1990.

John Lanahan, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Carol C. Lam, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before WALLACE and FLETCHER, Circuit Judges, and GEORGE,[*] District Judge.

GEORGE, District Judge:

Appeal from a sentence departing from sentencing commission guidelines ("Guide-

---

[*] The Honorable Lloyd D. George, United States District Judge, District of Nevada, sitting by designation.

lines").[1] The district court's opinion is affirmed except for the special assessment.

## BACKGROUND

On January 5, 1988 at approximately 7 p.m., border patrol agents near Salton Sea, California, became suspicious of the driver of an older model Mercury automobile. The driver, apparently the sole occupant of the vehicle, was sitting in a rigid manner and staring straight ahead as he drove past the agents. The rear of the Mercury was riding low as if heavily laden. The agents stopped the car to investigate the possibility that it was being used to smuggle aliens.

When the agents activated the emergency lights on their cruiser, the Mercury slowed and began to pull over. However, before reaching the side of the highway, it swung back onto the road and accelerated. The driver led the agents on a twelve-mile chase at speeds reaching ninety miles per hour. The car often swerved and passed other cars on the shoulder or in the left-hand lane.

When the Mercury finally stopped the agents arrested appellant LIRA–BARRAZA, an illegal alien, who had been driving. The agents discovered a number of undocumented aliens in the Mercury. Two of the aliens were in the trunk.

LIRA–BARRAZA pled guilty to illegal transportation of aliens pursuant to 8 U.S.C. § 1324. The Honorable William B. Enright, District Judge for the Southern District of California, sentenced him to 36 months in custody, to be followed by two years of supervised release. In sentencing LIRA–BARRAZA, the judge departed from the Guidelines.[2]

On appeal, LIRA–BARRAZA argues that his sentence was imposed "in violation of law as a result of an incorrect application of the Sentencing Guidelines." LIRA–BARRAZA cites to 18 U.S.C. § 3742(d)(1). Specifically, LIRA–BARRAZA argues that the sentence violates the law because it is (1) "unreasonable," (2) arbitrary in violation of fifth amendment due process, and (3) cruel and unusual in violation of the eighth amendment. These arguments are grounded, for the most part, on numerical calculations.

## I

## STANDARDS OF REVIEW

18 U.S.C. § 3742 limits our review. Based upon Section 3742, we believe that departures from the Sentencing Guidelines should be reviewed according to a five step process:

(1) whether the district judge adequately identified the "aggravating or mitigating circumstance" (hereinafter "circumstance");

(2) whether the identified circumstance actually existed;

(3) whether the circumstance was adequately taken into consideration by the Sentencing Commission,

(4) if not, whether the circumstance should result in departure; and,

(5) whether the extent or degree of departure was unreasonable.

## STEP ONE

18 U.S.C. § 3553(c) requires the district court to state its reasoning for departing from the Guidelines. In addition, we require the district court to identify the specific aggravating or mitigating circumstance present in the case, and to make a clear finding that the Commission did not adequately consider that circumstance.[3] 18 U.S.C. § 3553(b); *United States v. Michel*, 876 F.2d 784, 786 (9th Cir.1989); *see also United States v. Salazar–Villarreal*, 872 F.2d 121, 122 (5th Cir.1989).

**1.** All references to the Sentencing Guidelines shall be to the 1987 text as amended effective January 15, 1988 and June 15, 1988.

**2.** The maximum sentence provided for by statute is incarceration for five years. 8 U.S.C. § 1324(a)(1).

**3.** If the district court fails to comply with this requirement, the appellate court may vacate and remand the sentence. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 80, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3263 (Senate Report).

■ When the sentencing court states several reasons, but we are unable to tell the extent to which it relied on each, we will vacate and remand, unless such a clarification is unnecessary to our review.[4] *See United States v. Nuno–Para,* 877 F.2d 1409, 1413–14 (9th Cir.1989).

## STEP TWO

■ If step one is met, we then determine whether the circumstance identified by the district court as the basis for departure actually exists. This is a factual determination which we review for clear error. 18 U.S.C. § 3742(d); *United States v. Sanchez–Lopez,* 879 F.2d 541, 557 (9th Cir. 1989); *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

## STEP THREE

■ If step two is met, we next decide whether the circumstance identified by the district court as justifying a departure qualifies as "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b). Section 3553(b) suggests two situations which justify a departure:[5] (1) the identified circumstance was ignored by the Commission in formulating the relevant sections of the Guidelines; or (2) the identified circumstance is "present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction."[6] Sentencing Guidelines § 5K2.0 at 5.36–5.37.

In determining whether the kind of circumstance was adequately taken into consideration by the Commission, the district court shall consider the Sentencing Guidelines, policy statements, and official commentary of the Sentencing Commission (hereinafter "statutory record").[7] *See* 18 U.S.C. § 3553(b). Fundamental principles

4. The district court's clear explanation for departing from the guidelines serves several functions:
   (1) To inform the defendant and the public of the reasons for the sentence. Senate Report at 3263.
   (2) To inform criminal justice researchers evaluating the effectiveness of various sentencing practices. *Id.*
   (3) To assist the Sentencing Commission in its continuous re-examination of its guidelines and policy statements. *Id.; see also* Sentencing Guidelines Ch. 1, Part A, Introduction 4(b) at 1.7.
   (4) To assist the Sentencing Commission in gathering information and in revising the sentencing guidelines. *United States v. Wright,* 873 F.2d 437, 444 (1st Cir.1989); *see also* 28 U.S.C. § 994(*o* ) (Commission has power to review and revise the guidelines).
   (5) To assist the district court in analyzing more clearly its own reasons for departure. *See United States v. Mejia–Orosco,* 867 F.2d 216, 221–22 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).
   (6) To assist the process of appellate review.

5. Although the Guidelines also expressly anticipate the following situations, for these the standard of review is either irrelevant or determined at another stage of our analysis:
   (1) Grounds not mentioned in the Guidelines which may justify departure. Sentencing Guidelines Ch. 1, Part A, Introduction 4(b) at 1.8.

   (2) General and specific circumstances justifying departure. *E.g., id.* § 5K2.0 at 5.36–5.37.
   (3) Circumstances which are impermissible bases for departure, such as an offender's race, sex, national origin, creed, religion, and socio-economic status. *Id.* § 5H1.10 at 5.31; 28 U.S.C. § 994(d); *United States v. Burch,* 873 F.2d 765, 768 (5th Cir.1989).
   (4) Other factors "not ordinarily relevant in determining whether a sentence should be outside the guidelines" including an offender's age, education, vocational skills, mental and emotion conditions, physical condition (including drug dependency and alcohol abuse), previous employment record, family ties and responsibilities, and community ties. Sentencing Guidelines § 5H1.1–.6 at 5.29–5.30; *see* 28 U.S.C. §§ 994(d)(1)–(8), 994(e).

6. The Commission stated:
   When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted....
   Sentencing Guidelines Ch. 1, Part A, Introduction 4(b) at 1.6. Furthermore,
   The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.
   *Id.* at 1.6.

7. All of these are contained in the "Guidelines Manual" published by the Commission.

of appellate review require us to review *de novo* questions of law such as a trial court's construction of statutes. *See, e.g., Blackfeet Indian Tribe v. Montana Power Co.,* 838 F.2d 1055, 1057 (9th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 79, 102 L.Ed.2d 56 (1988); *Native Village of Stevens v. Smith,* 770 F.2d 1486, 1487 (9th Cir.1985), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1640, 90 L.Ed.2d 185 (1986). In close cases, the sentencing court must attempt to discern the intent of the Commission with respect to the identified circumstance. The question of the intent of a law making commission is a question of law—no different than any other statutory interpretation we must decide.[8]

We move on to step four only if we determine in step three that the Sentencing Commission has not adequately considered the identified circumstance. Such a determination means that the Commission has not intended to foreclose the district court from departing from the Guidelines.

### STEP FOUR

■ We next decide whether the identified circumstance should, in the absence of statutory guidance, be a basis for departure from the Guidelines.[9] 18 U.S.C. § 3553(b). The question of whether departure is warranted can only be decided by the sentencing court at the time of sentencing. Sentencing Guidelines § 5K2.0 at 5.36. Because of their experience with the sentencing process, district courts enjoy an expertise foreign to both the Sentencing Commission and the appellate courts. This expertise complements the district court's greater familiarity with the particular factual twists of a case. Therefore, we hold that abuse of discretion is the proper standard of review for determining that a circumstance is a proper basis for departure.

The Guidelines seek to eliminate unwarranted sentencing disparity by establishing a subtle balance between uniformity and the exercise of individual discretion by sentencing judges. 1984 *U.S. Code Cong. & Admin. News* at 3333. The Guidelines suggest an evolutionary process in which the Sentencing Commission learns from the experience of sentencing judges through, among other things, their departures from the Sentencing Guidelines. *See* Sentencing Guidelines Ch. 1, Part A, Introduction 4(b) at 1.7–1.8; *see also Wright,* 873 F.2d at 444.

The process should be dynamic—not static. This is not to suggest that departure from the Guidelines should be the rule, and conformity the exception.[10] At this early stage in the Guidelines' development we hesitate to state a general rule other than the abuse of discretion standard of review on appeal.[11] *See* Sentencing Guidelines, Ch. 1, Part A, Introduction 3 at 1.4; *Wright,* 873 F.2d at 444.

---

**8.** We do not believe that the issue of whether the Commission considered the degree of the circumstance requires a different analysis has yet been squarely decided. *But cf. Nuno–Para,* 877 F.2d at 1413–14 (concluding that the district court erred by taking into account certain circumstances that were adequately considered by the Commission but not stating whether the Commission considered the circumstance in kind or degree). Since the facts of this case do not raise the issue, we do not decide the standard of review of a district court's finding that a circumstance was present to a *degree* not adequately considered by the Commission.

**9.** Determination of the standard of review for step four is apparently an issue of first impression before us.

**10.** The Commission states that it does not expect that courts will often depart—departure being the unusual case. *Nuno–Para,* 877 F.2d at 1413. At the same time, we hesitate to unnecessarily discourage district courts from departing from the Guidelines. Imposing a stricter standard of review might help ensure that departures remain highly unusual; however, such an extreme position would upset the balance contemplated by the Guidelines. *See* Sentencing Guidelines Ch. 1, Part A, Introduction 4(b) at 1.7–1.8.

**11.** Although more intrusive appellate review would arguably provide the Commission with the insights of appellate courts, the Commission has greater interest in the experience and reasoning of those courts which actually apply the Guidelines. Perhaps at a later stage a more intrusive review may be warranted or even directed by Congress. Our current limited role is to review sentences which depart from the Guidelines to prevent unreasonable sentences, not to improve reasonable ones. *See* 18 U.S.C. § 3742(e)(3).

## STEP FIVE

■ In step one, the sentencing court identified the aggravating or mitigating circumstances warranting a departure from the Guidelines. In step five, the sentencing court must state its reasons for the direction and the degree of its departure. 18 U.S.C. § 3553(c). Generally, the sentencing court should explain why it chose a greater departure from the Guidelines than was imposed and upheld in previous published cases involving ostensibly similar circumstances.

■ After determining the presence and clarity of the above explanations, we next determine whether the departure is "unreasonable," 18 U.S.C. § 3742(e)(3), either in direction or in degree. *Diaz–Villafane,* 874 F.2d at 49.

Section 3742 does not define the term "unreasonable," but based upon the statutory structure, the Guidelines, and general appellate principles, this court determines that the appropriate standard of review is the deferential abuse of discretion standard. Naturally, a district court abuses its discretion if it imposes a sentence which is unreasonable. We find persuasive the First Circuit's analysis in *Diaz–Villafane:*

> This ... step involves what is quintessentially a judgment call. District courts are in the front lines, sentencing flesh-and-blood defendants. The dynamics of the situation may be difficult to gauge from the antiseptic nature of a sterile paper record. Therefore, appellate review must occur with full awareness of, and respect for, the trier's superior "feel" for the case. We will not lightly

disturb decisions to depart, or not, or related decisions implicating degrees of departure.

*Diaz–Villafane,* 874 F.2d at 49.

The need for balance spoken of in step four is again apparent here. The goal of limiting unwarranted disparity will be met by balancing the need for uniformity with the necessary exercise of judicial discretion by sentencing judges. To allow an overly intrusive standard of review to impede the Sentencing Commission's efforts to monitor and to improve the Guidelines would upset that balance.

## II

### DISCUSSION

We now apply the foregoing standard of review to LIRA–BARRAZA's sentence. He mistakenly characterizes his challenge as a claim that his sentence was imposed as a result of an incorrect application of the Guidelines under 18 U.S.C. § 3742(e)(2). Section 3742(e)(2) does not apply here. Properly understood, LIRA–BARRAZA's claim is that his sentence is outside of the applicable Guidelines range and unreasonable, and thus our review falls under 18 U.S.C. § 3742(e)(3).

### STEP ONE

■ This case involves two special circumstances. First, as in *Ramirez–De Rosas,* the district court made clear that it based its departure from the Guidelines on the defendant's participation in a high-speed chase.[12] *U.S. v. Ramirez–DeRosas,* 873 F.2d 1177 at 1178–79 (9th Cir.1989). The

12. Judge Enright adequately articulated his reasoning at the time of sentencing:

> Well, ladies and gentlemen, again, as we have mentioned initially, what delineates this case from the normal is the fact of a high-speed chase.
>
> I would confirm the resumé of facts as set out in the probation report; and I would find them to be accurate; and I would base my decision to—relative to the high-speed chase, upon the information therein contained. It seemed to me, Mr. Lira, that you compounded your troubles immeasurably when the high-speed chase started. I have mentioned it before; and I am going to depart from the Guideline recommendation, although there is

> no recommendation here, because the Probation Office was unable to formulate it, given the defendant's posture in the case. I am going to depart because of the circumstances of the high-speed chase.
>
> Mr. Lira, I have never been in a trunk when it is traveling that fast on a highway; but I don't think I would ever want to be there, and, if it caused a passenger to plead with you because of what he observed, as to the manner of your driving, to stop, I hope that it saved some lives on this particular occasion; but we do have a high-speed chase that took about 12 miles and reached speeds of 90 miles an hour; and I think, under all those circumstances, I am satisfied that the Sentencing

district court explicitly stated that the high-speed chase was a circumstance which it relied on, and made an explicit finding that it had not adequately been taken into account by the Commission. *See Michel,* 876 F.2d at 786. The Sentencing Transcript also shows that the district court believed that defendant's conduct constituted dangerous or inhumane treatment.[13] LIRA-BARRAZA drove his car in an extremely dangerous manner while he carried aliens as passengers, including two who were in his trunk. We therefore find that the district court complied with required procedures for departing from the Guidelines.

### STEP TWO

■ LIRA–BARRAZA does not dispute that he participated in the high-speed chase while transporting a number of illegal aliens, several of them in the trunk of the car. The district court did not commit clear error in finding that the circumstances existed in this case.

### STEP THREE

■ We next consider whether the Commission considered the circumstances identified by the district court as justifying a departure. First, in *Ramirez–De Rosas,* we held that a high speed chase was a kind of aggravating circumstance which the Commission did not adequately consider in formulating the Guidelines. *Ramirez–De Rosas,* 873 F.2d at 1179. Second, the Commission expressly stated that it did not consider "offenses involving large numbers of aliens or dangerous or inhumane treatment." Sentencing Guidelines § 2L1.1, Application Note 8, at 2.102. Based on prior case law and the Commission's own statements, it is evident that the Commission did

not consider these kinds of circumstances. Thus, based upon our own *de novo* review, we are convinced that the third step is satisfied.

### STEP FOUR

■ The next step involves whether the identified circumstances provide a permissible basis for a departure. In *Ramirez–De Rosas,* we held that a high-speed chase allowed for a departure. *Ramirez–De Rosas,* 873 F.2d at 1179. The Sentencing Commission clearly expressed its opinion regarding dangerous or inhumane treatment. The Commission stated that, "an upward departure should be considered in those circumstances." Sentencing Guidelines § 2L1.1, Application Note 8, at 2.102. Thus, we conclude that the district court did not abuse its discretion in accepting the Commission's recommendation of an upward departure.

### STEP FIVE

■ The district court in this case stated the reasons for the direction and degree of its departure. *See* note 12, above. Generally, the sentencing court should explicitly state its reasoning in choosing a greater departure from the Guidelines than was imposed and upheld in previous published cases involving ostensibly similar circumstances. However, the failure to make such a statement is not a per se abuse of discretion.

■ The sentencing judge's reasoning is crucial because it is, by definition, the foundation for our evaluation of reasonableness. We want to evaluate the reasoning behind the disparities, since the dispari-

Commission did not adequately, in formulating their Guidelines, did not consider that circumstance.

It is a problem unique, I assume, to the border district in Arizona, Texas, and in San Diego; and I have taken the position in the past that the people who use our highways are entitled to feel that there isn't someone who is trying to avoid an arrest that will jeopardize the lives of some people, as I think you did on this occasion.

I tell you that, not to add to your trouble, but to let you know why I am doing what I am doing.

I am going to impose a sentence of 36 months in your case. And, as I say, you would be going home to Mexico, today, if you hadn't engaged in that high-speed chase; so, for whatever value that has to you, I thought you should know it.

Sentencing Transcript at 42–44.

**13.** *Id.*

ties themselves have little meaning in the abstract.

In *Ramirez–De Rosas*, the defendant engaged in a high-speed chase. This court held that the district court reasonably departed from the Guidelines by imposing a 30–month sentence where the Guidelines recommended zero to four months. *Ramirez–De Rosas*, 873 F.2d at 1179. The instant case involves the same district court judge, the same Guidelines-suggested sentence (zero to four months), and the same circumstance justifying departure: a high-speed chase. Furthermore, the speed and the miles traveled were less in the instant case than in *Ramirez–De Rosas*. Nevertheless, this court recognizes that there are differences: in the instant case two of the aliens rode in the trunk, whereas in *Ramirez–De Rosas* they were in the back of a van, making the instant case more serious.

The sentencing judge went to great lengths to explain what was in his mind at the time of sentencing:

> Mr. Lira, I have never been in a trunk when it is traveling that fast on a highway; but I don't think I would ever want to be there, and, if it caused a passenger to plead with you because of what he observed, as to the manner of your driving, to stop, I hope that it saved some lives on this particular occasion....

Sentencing Transcript at 42–44. These same facts point out the dangerous, if not inhumane, condition for which LIRA–BARRAZA was directly responsible. The gravity with which the sentencing judge viewed this behavior is clear from the transcript.

We are satisfied that the direction and degree of departure are not unreasonable.[14]

Since we conclude that LIRA–BARRAZA's sentence is reasonable we do not address his fifth or eighth amendment arguments regarding his sentence.

## III

LIRA–BARRAZA's other arguments are identical to those raised in *Ramirez–De Rosas*, in which the issues now before us were resolved against the defendant. Based upon *Ramirez–De Rosas*, we resolve all these remaining issues against LIRA–BARRAZA.[15]

In *United States v. Munoz–Flores*, 863 F.2d 654, 661 (9th Cir.1988), *cert. granted*, —— U.S. ——, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989), this court held that the special assessment statute was passed in violation of U.S. Const. Art. 1, § 7, the origination clause. This holding has been applied regardless of the defendant's sentencing date. *United States v. Montilla*, 870 F.2d 549, 553 (9th Cir.1989). Therefore, we vacate the special assessment imposed upon LIRA–BARRAZA.

**AFFIRMED EXCEPT FOR THE SPECIAL ASSESSMENT.**

---

**14.** As previously observed, the trial courts retain a certain amount of discretion even under the Guidelines. *See Diaz–Villafane*, 874 F.2d at 49–50. While avoiding sentencing disparity is an important goal, reviewing courts should not comb through the records of a particular district judge's sentences in search of disparities. Our job is to correct clearly unreasonable sentences—not to improve reasonable ones.

**15.** LIRA–BARRAZA argues that his sentence is unreasonable in light of lesser penalties prescribed by state law for engaging in high-speed chases or other reckless driving. Neither the Guidelines nor the statutory factors to be considered in imposing a sentence support this approach. *See* 18 U.S.C. § 3553(a); *see also Diaz–Villafane*, 874 F.2d at 51–52.

LIRA–BARRAZA's argument relies on the legislative judgments of an entirely separate sovereign. Different sovereigns operate independently in the area of criminal punishment. *See, e.g., Heath v. Alabama*, 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985) ("When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.' "), *quoting United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922).