UNITED STATES of America, Plaintiff–Appellee,

v.

Miguel RODRIGUEZ–CASTRO, Defendant–Appellant.

No. 89–50093.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1989.

Decided May 10, 1990.

Withdrawn July 9, 1990.

Opinion Filed July 9, 1990.

Shawn M. Hays, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Judith S. Feigin and Michael J. Dowd, Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.

Before HUG, HALL and WIGGINS, Circuit Judges.

ORDER

The opinion filed May 10, 1990, is hereby WITHDRAWN. The opinion submitted herewith shall be filed in its stead.

## OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge:

Miguel Rodriguez–Castro challenges the sentence imposed upon him after he pled guilty to transportation of an undocumented alien, a violation of 8 U.S.C. § 1324(a)(1)(B). Rodriguez–Castro argues that his 54–month prison term is outside the range of the applicable Sentencing Guideline ("the guidelines") and is unreasonable. He further contends that his sentence is illegal because the combination of his terms of imprisonment and supervised release exceeds the statutory maximum. Although we agree with most of the district court's reasoning, we must remand on the basis that the court failed to adequately explain the extent of its departure.

### I

On January 2, 1988, border patrol agents saw a pickup truck stop near the United States–Mexico border and turn off its lights. As the agents watched, several people ran from the border and entered the truck which then proceeded west, still with its lights off. The agents activated their red lights and attempted to stop the vehicle, but the driver, later identified as Rodriguez–Castro, refused to yield. Instead, he led the agents on a three-mile chase at speeds as high as 75 miles per hour. Rodriguez–Castro was apprehended only after he jumped from the truck while it was still moving. Although the vehicle contained fifteen passengers, no one was injured.

Rodriguez–Castro has a history of convictions for immigration offenses, including three convictions for illegal entry and two for aiding and abetting illegal entry. On at least one prior occasion, he led the police on a similar high speed chase in which he rammed a border patrol vehicle with a stolen automobile containing fourteen undocumented aliens. During each of his five previous arrests, Rodriguez–Castro gave the authorities a different false name.

The applicable guideline range for Rodriguez–Castro's present offense, as indicated in the presentence report, is 12 to 18 months. The district court nonetheless departed from the guidelines and sentenced Rodriguez–Castro to 54 months in prison followed by three years of supervised release, stating: "The reason I am imposing that term is primarily because of the high-speed chase, the names that you have given each time you have been apprehended in the criminal justice system, [and] the fact that you have been engaged in high-speed chases before." This appeal followed.

### II

■ We review district court departures from the guidelines under the five-step standard announced in *United States v. Lira–Barraza*, 897 F.2d 981, 983–86 (9th Cir.1990). The first step requires us to verify that the district court stated its reasons for departure. "In addition, we require the district court to identify the specific aggravating or mitigating circumstance present in the case, and to make a clear finding that the [Sentencing] Commission did not adequately consider that circumstance." *Id.* at 983 (citations omitted). The court below complied with these requirements by listing three reasons for its departure from the guidelines: the high-speed chase, the fact that Rodriguez–Castro repeatedly had used fictitious names when arrested, and the fact that Rodriguez–Castro had been involved in a similar high-speed chase before. The court's finding that the Sentencing Commission ("the Commission") did not adequately consider these circumstances is implicit in its discussion.[1]

---

1. Indeed, in an earlier decision, the same district judge specifically stated that he believed the Commission had not adequately taken high-speed chases into consideration when formulating the guidelines for illegal transportation of aliens. *See Lira–Barraza*, 897 F.2d at 986 n. 12. Given this fact, remand in this case on the basis that the district court failed to mouth the words

"I do not believe that the Commission adequately considered this circumstance" would be an extraordinary waste of time. Similarly, Judge Enright obviously believed that the Commission had not adequately taken into account the fact that Rodriguez–Castro had engaged in a similar high-speed chase in the past. This conduct constitutes the same sort of "repetitive pattern" that

The second step of our review requires a determination of whether the circumstances identified by the district court as warranting departure actually exist. In essence, this step calls for a review of a district court's factual findings, and is thus subject to clearly erroneous review. *See id.* at 984. We are unprepared to say that the court below committed clear error by finding that appellant either repeatedly provided authorities with fictitious names when arrested or previously engaged in a high-speed chase with law enforcement officials. Appellant does not even dispute these findings. And although appellant insists that he did not engage in a chase prior to being arrested for the crime for which he was sentenced below, the district court did not err by finding otherwise. Rodriguez–Castro admits he was traveling at a high rate of speed. He claims, however, that he did not immediately notice the patrol unit behind him. He further contends that he attempted to stop the truck when he realized he was being followed, but that the vehicle continued to move slowly after he left the driver's seat. The court below effectively disbelieved Rodriguez–Castro's explanation, a conclusion which strikes us as eminently reasonable.

■ The third step of our review requires that we determine "whether [each] circumstance identified by the district court as justifying departure qualifies as 'an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" *Id.* (*quoting* 18 U.S.C. § 3553(b)). This is a question of law mandating de novo review. *See id.* at 985. If the circumstance does so qualify, we proceed to the fourth step, in which we review the district court's actual decision to depart from the guidelines pursuant to the identified circumstance under the abuse of discretion standard. *Id.* We

have already held both that the Commission did not adequately consider high-speed chases when formulating the guidelines and that a court may properly depart upwards from the guideline sentence on this basis. *See id.* at 987; *United States v. Ramirez–DeRosas,* 873 F.2d 1177, 1179 (9th Cir.1989); *United States v. Marco L.,* 868 F.2d 1121, 1124 n. 2 (9th Cir.1989) (dicta); *see also United States v. Hernandez–Vasquez,* 884 F.2d 1314, 1316 (9th Cir. 1989) (high-speed chase justifies departure only when defendant was driver of vehicle). The *Lira–Barraza, Ramirez–DeRosas,* and *Marco L.* decisions rely upon an application note to the guideline for illegal transportation of aliens stating that the Commission did not consider "offenses involving large numbers of aliens or dangerous or inhumane treatment." United States Sentencing Commission, *Guidelines Manual* § 2L1.1 application note 8 (1989) [hereinafter Sentencing Guidelines]. Indeed, the district court below obviously was concerned about the danger the high-speed chase posed to the aliens in the pickup truck: "Because you didn't want to be apprehended, you jeopardized the lives of all those people. I can imagine that was a very terror-filled ride in that pickup truck." But the court also indicated that Rodriguez's high-speed driving endangered the safety of people on the highway generally: "I think the people who use the highways in this country are entitled to feel that the people who drive the cars on the highway with them have some semblance of common decency and will drive their cars in a reasonable manner." This concern warrants departure based upon Sentencing Guidelines § 5K2.14, which provides that "[i]f national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense."

Judge Enright explicitly found not to have been adequately considered by the Commission in *United States v. Montenegro–Rojo,* No. 89–50134, slip op. 3695, 3702 (9th Cir. April 12, 1990) (*quoting* Judge Enright to effect that the guidelines for criminal history had not adequately

accounted for defendant's repetitious trolley misconduct). Judge Enright also identified a defendant's use of fictitious names when arrested as a circumstance not adequately taken into account by the Commission in its criminal history guidelines. *See id.* at 3701–02.

As for appellant's repeated use of fictitious names, we previously identified such conduct as not adequately considered by the Commission and as a justifiable ground for departure. *See United States v. Montenegro–Rojo*, No. 89–50134, slip op. 3695, 3704 (9th Cir., Apr. 12, 1990) (past use of alias justifies departure on basis of criminal history); *Hernandez–Vasquez*, 884 F.2d at 1316 (repeated use of aliases justifies departure generally).

The fact that Rodriguez–Castro previously had engaged in a similar high-speed chase was not adequately taken into consideration by the Commission. We have held that repetitive conduct is sufficiently unusual to satisfy step three of our review. *See Montenegro–Rojo*, slip op. at 3704–06. We have also held that where such conduct poses a danger to others, departure is warranted under step four of our review. *See id.* at (repeated trolley misconduct by alien upon entry into United States justifies departure). Appellant's pattern of engaging law enforcement officials in a high-speed chase justifies the district court's departure since it indicates that he poses a continuing threat to drivers in San Diego.

The fifth step of our review asks whether the degree of the district court's departure is "unreasonable" within the meaning of 18 U.S.C. § 3742(e)(3). We review the reasonableness of the district court's departure pursuant to the abuse of discretion standard. *See Lira–Barraza*, 897 F.2d at 986. Rodriguez–Castro argues that since the sentence imposed by the district court was three times in excess of the guideline sentence, it is unreasonable by definition. He also contends that his sentence was unreasonable by virtue of the fact that the only crimes for which a defendant with his criminal history category (IV) could receive a guideline sentence of 54 months are offenses much worse than his

own: assault with intent to commit murder (Sentencing Guidelines § 2A2.1); aggravated assault resulting in serious bodily injury (Sentencing Guidelines § 2A2.2(b)(3)); burglary of a residence while armed (Sentencing Guidelines § 2B2.1(b)(4); robbery resulting in bodily injury (Sentencing Guidelines § 2B3.1(b)(3) [2]; extortion by force or threat resulting in bodily injury (Sentencing Guidelines § 2B3.2(b)(3)(A); and arson, where the defendant recklessly endangered the lives of others (Sentencing Guidelines § 2K1.4(b)(2)). Finally, Rodriguez–Castro likens his conduct during the high-speed chase as akin to reckless driving under the California Vehicle Code, which carries a sentence of only from five to ninety days. *See* Cal.Veh.Code § 23103(c) (Deering Supp.1990). He argues that the degree of the district court's departure below had to be unreasonable because of the disparity between it and the state-law punishment range for reckless driving.

This last contention obviously must fail because the United States and California are separate sovereigns that need not sentence similarly. Rodriguez–Castro's analogies to the sentences given other crimes in the guidelines, on the other hand, give us pause, for they represent the very process in which the district court should have, but did not, engage itself. We have held that when a district court departs from the guidelines it must "state its reasons for the direction and *degree* of its departure," *Lira–Barazza*, 897 F.2d at 986 (emphasis added). The guidelines themselves state that when a departure is predicated on the inadequacy of the defendant's criminal history category, the court must state its basis for the degree of its departure with "reference [to] the guideline range for a defendant with a higher ... criminal history category." Sentencing Guidelines § 4A1.3 (Policy Statement) at

2. The base offense level for robbery is 20, Sentencing Guidelines § 2B3.1(a), which is high enough when combined with a criminal history category of IV to result in a sentence of 54 months. *See id.* at 5.2 (Sentencing Table). Yet at the time appellant was sentenced, the base offense level was 18. *See id.* app. C, amend. 110, at C. 55–56 (noting that increase took effect

Nov. 1, 1989). Since a base offense level of 18 combined with a criminal history category of IV yields a sentence of no greater than 51 months, appellant found it necessary for purposes of his analogy to specify robbery resulting in bodily injury, which has always increased the base offense level by 2. *See id.* § 2B3.1(b)(3)(A).

4.9. We remanded for resentencing in *Cervantes–Lucatero* in part because the district court failed to explicitly rationalize the extent of its upward departure by analogizing to the guideline sentences of defendants in higher criminal history categories. *See U.S. v. Cervantes–Lucatero,* 889 F.2d 916, 919 (9th Cir.1989).

We must also remand for resentencing in this case. Since the district court's departure was grounded in part on the inadequacy of Rodriguez–Castro's criminal history category, the court was obligated to justify the extent of its departure by analogy to the guideline sentences of defendants in a higher criminal history category. Instead, the district court, without saying why, imposed a prison term 36 months in excess of the maximum sentence appellant could have received under the guideline range calculated in the presentence report.

On remand, the district court need only utilize an analogy that is reasonable, not necessarily one suggested by Rodriguez–Castro himself. Indeed, the analogies appellant presented to this court would appear to be inapposite in any event because they compare his sentence to those of other defendants *within* his own criminal history category as opposed to the sentences of defendants receiving his same total sentence in *different* criminal history categories, as required by Sentencing Guidelines § 4A1.3.

### III

Rodriguez–Castro's final contention— that, when combined, his terms of imprisonment and supervised release cannot lawfully exceed the statutory maximum of five years under 8 U.S.C. § 1324—is foreclosed by our recent decision in *Montenegro–Rojo,* slip op. at 3709–15.

### IV

Appellant's sentence is AFFIRMED IN PART, and VACATED and REMANDED in part.