**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leslie TODD, Jr., Defendant–Appellant.**

**No. 89–50435.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1990.

Decided July 26, 1990.

Robert Carriedo, Chula Vista, Cal., for defendant-appellant.

William Braniff, U.S. Atty. and Mary A. Schneider, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HUG, BOOCHEVER and BEEZER, Circuit Judges.

HUG, Circuit Judge:

The central issue in this case is whether the district court can depart from the Sentencing Guidelines without explaining how it arrived at its degree of departure. We hold that when the district court gives no explanation for its degree of departure, the appellate court cannot adequately determine whether the departure was "unreasonable" on review. *See* 18 U.S.C. §§ 3553(a), (c), 3742(e)(3) (1988). Therefore, we remand to the district court to express its reasons for the extent of departure.

## I. BACKGROUND

The United States Naval Investigative Service ("NIS") learned in late January 1989 that approximately 184 serialized unissued blank armed forces identification cards were stolen from a safe at Camp Pendleton, California. Subsequently, the NIS was notified that Leslie Todd, the appellant, attempted to cash a check at the Marine Corps Exchange on Camp Pendleton using one of the stolen identification cards.

Later, the NIS was informed by the North County Transit District that a green camouflage bag, which had unpaid rent due, was opened and found to contain many items of United States Marine Corps property. Such property included 51 of the stolen identification cards.

The NIS learned that on March 8, 1989 a person who identified himself as Craig Armuth attempted to claim the camouflage bag. He was told to return the next day. On March 9, Todd (alias Craig Armuth) returned to claim the bag and was arrested.[1]

Subsequently, Todd's motel room and vehicle were searched. The search produced armed forces identification cards; partially and fully completed personal checks belonging to persons other than Todd; cameras and photography equipment used in the manufacture of identification cards;

---

**1.** Appellant had cashed approximately seventy checks that resulted in approximately $12,000 in losses before he was arrested.

typewriters; printers capable of producing the type style contained on the falsified identification cards; lamination equipment; and partially and fully completed honorable discharge forms.

Todd was indicted on four counts. In a plea bargain, he agreed to plead guilty to counts 3 and 4: possession of document-making implements with intent to use unlawfully in violation of 18 U.S.C. §§ 1028(a)(5), (b)(1)(A), and (c)(1) (1988), and possession of stolen mail in violation of 18 U.S.C. § 1708 (1988). In return, the Government dismissed counts 1 and 2, but indicated that it would request an upward departure from the applicable Sentencing Guideline.[2] The probation report also recommended departure.

The applicable Guideline range indicated an 8–14 month sentence.[3] The district court sentenced Todd to 48 months imprisonment, and a three-year period of supervised release.

## II. STANDARD OF REVIEW

■ We review upward departures from the Guidelines under a five-step process: (1) we review *de novo* whether the district court adequately identified the aggravating or mitigating circumstance; (2) we review for clear error whether the identified circumstance actually existed; (3) we review *de novo* whether the circumstance was adequately taken into consideration by the Sentencing Commission; (4) we review for an abuse of discretion the district court's determination that a circumstance is a proper basis for departure; (5) we review for an abuse of discretion whether the de-

gree of departure was unreasonable. *United States v. Lira–Barraza*, 897 F.2d 981, 983–86 (9th Cir.1990); *see also United States v. Gomez*, 901 F.2d 728, 729 (9th Cir.1990).

## III. ANALYSIS

### STEP 1

■ The district judge stated that he departed because: (1) Todd had stolen armed forces identification cards and the court felt that misuse of this type of identification card posed a grave potential danger to the United States and military security, *see* U.S.S.G. § 5K2.14 (Nov.1989), and (2) Todd's actions showed greater involvement than merely trying to obtain employment.[4] We find that the district court adequately identified the aggravating circumstance.

### STEP 2

There was no dispute that the stolen identification cards were armed forces identification cards and that such identification cards could be misused in such a way as to endanger United States security. Therefore, we find that the district court did not commit clear error in finding that the identified aggravating circumstance existed.

### STEP 3

■ Todd pled guilty to the "possession of document-making implements." The Guidelines do not take into account that these document-making implements were for the armed forces and thus posed a potential danger to national defense. National security is a special danger that is

2. Counts 1 and 2 were dropped: (1) possession of a military permit with intent to defraud in violation of 18 U.S.C. § 499 (1988); and (2) possession of five or more false identification documents with intent to use unlawfully in violation of 18 U.S.C. §§ 1028(a)(3), (b)(2)(B), (c)(1), and (3) (1988).

3. The sentencing court found the appropriate base offense to be 6 pursuant to U.S.S.G. § 2F1.1(a) (Nov.1989). The court added 3 points for the amount of loss to victims pursuant to section 2F1.1(b)(1)(D). The court also added 2 points for more than minimal planning or a scheme to defraud one victim pursuant to

sections 2F1.1(b)(2)(A) and (B). The court deducted 2 points for acceptance of responsibility pursuant to section 3E1.1(a). The total offense level was 9. The court found the Guideline range was 8–14 months. *See* U.S.S.G. § 5A (sentencing table).

4. The presentence report also suggested that the court depart because: (1) Todd lied to the authorities and thus obstructed justice, *see* U.S.S.G. § 3C1.1, and (2) the dollar loss involved did not fully capture the seriousness of the conduct. *See id.* § 2F1.1, note 9.

The district judge, however, did not indicate that he departed on either of these grounds.

not inherent in all cases where individuals are making false documents. Based upon our *de novo* review, we find that the district court satisfied the third step.[5]

### STEP 4

■ The district court found that the potential danger of misuse of the stolen documents posed a proper basis for departure. *See* U.S.S.G. § 5K2.14, p.s. (Public Welfare):

> If national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense.

Access to the armed forces identification cards not only enabled Todd to obtain money fraudulently, it also enabled him (or the individuals he gave the cards to) to enter onto military installations and to have access to military equipment and classified information. Such access could significantly endanger national security.[6]

We find that the district court did not abuse its discretion in departing from the Guidelines because the stolen identification cards posed a great potential threat to national security.

### STEP 5

■ The final step of the standard of review process is the most troubling. Here, Todd's Guideline range indicated a sentence from 8–14 months. The court departed upward by 34 months, without indicating why it departed to this degree.

In the fifth step of the review process, the question is whether the court abused its discretion in determining that this degree of departure was reasonable. *Lira–Barraza*, 897 F.2d at 987–88. Because the court failed to indicate how it arrived at a 34–month departure, this court cannot properly determine if the departure was reasonable. *See United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989) (per curiam) (court's finding must be sufficiently specific to provide for meaningful appellate review); *accord United States v. Cervantes Lucatero*, 889 F.2d 916, 918–19 (9th Cir.1989).

We have held that in departing, a "sentencing court must state its reasons for the direction and the degree of its departure." *Lira–Barraza*, 897 F.2d at 986. *See also United States v. Richison*, 901 F.2d 778, 781 (9th Cir.1990) (per curiam) (in the fifth step of review, the record is required to contain statements by the sentencing court justifying the *degree* of the departure from the Guideline sentence, particularly with reference to adjacent criminal history categories); *United States v. Gayou*, 901 F.2d 746, 749 (9th Cir.1990) (the record must contain statements by the sentencing court justifying the degree of departure from the Guideline sentence); *United States v. Pearson*, 900 F.2d 1357, 1362 (9th Cir.1990) (the degree of departure is guided by analogy when applicable). The district

---

5. We assume the Guidelines did not take national defense into account for a violation of possession of document-making implement because the base offense level was calculated at 6. Offenses which involve national security have much higher offense levels. *See, e.g.*, 18 U.S.C. § 793(e) (1988). That section recognizes the potential harm of having documents in the unauthorized possession of a person who has reason to believe such documents could be used to the injury of the United States and to the advantage of a foreign nation. Violation of this section sets a maximum punishment of ten years imprisonment and/or fine. The base offense level, if top secret information was not involved, is 24. *See* U.S.S.G. § 2M (Offenses Involving National Defense).

6. The following was documented in the presentence report:

The undersigned also received a letter from Capt. Paul L. Tomlinson, USMC, Special Assistant U.S. Attorney. The letter indicates potential harm and security problems caused by the theft of the blank military identification cards. It is indicated that although it is not known whether or not the defendant planned on using these cards for himself personally, should these cards fall into the hands of subversives or terrorists, military security would be greatly affected. To date over 100 cards are still unaccounted for. These cards are used for entry onto military installations and such persons would have access to military equipment and classified information. On a lesser level, Capt. Tomlinson relates that the cards could be used to enter bases for theft-related purposes and most notably to be used to cash bad checks causing severe financial losses.

court did not comply with this requirement when it failed to explain why it sentenced Todd to a prison term 34 months in excess of the maximum term he could have received under the Guidelines.

Therefore, while we find that the district court was justified in its reasons for departing, we remand to the district court to express its reasons for the extent of the departure.

REMANDED.