UNITED STATES of America,
Plaintiff–Appellee,

v.

Jorge PEREZ–MAGANA, aka Alfredo
Mendoza–Equihua,
Defendant–Appellant.

No. 90–50107.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1990.

Decided April 1, 1991.

Judy Clarke, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Joyce Fitzpatrick, Asst. U.S. Atty., William Branitt, U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before D.W. NELSON and REINHARDT, Circuit Judges, and SINGLETON,* District Judge.

D.W. NELSON, Circuit Judge:

Appellant Jorge Perez–Magana appeals the district court's imposition of a 30–month sentence for transporting illegal aliens, which included an upward departure from the 6–12 month sentencing range suggested by the Sentencing Guidelines. While appellant concedes that the district court could depart and that it explained its departure, he argues that its *degree* of departure was unreasonable and that the court failed to give reasons for this degree.

---

* The Honorable James K. Singleton, District Judge for the District of Alaska, sitting by desig-nation.

Because the district court did not give an adequate explanation for its great degree of departure, we must vacate the sentence and remand this case for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was arrested on September 28, 1989, and indicted on October 11 on two counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). Near San Ysidro, California, a U.S. Border Patrol agent watched as a tan sedan driven by appellant pulled over near the international border fence and five aliens got in. After the officer followed the sedan and activated his flashing red lights and siren, appellant initially slowed and moved to the side of the road, while watching the agent in his rearview mirror. About thirty seconds later, Perez–Magana sped off and led the agent on a high-speed chase on side streets of San Ysidro for about five minutes. After running six stop signs, the sedan finally blew a tire, forcing the car to stop. Perez–Magana bailed out of the car and attempted to run back into Mexico, but he was apprehended.

On November 22 appellant pleaded guilty to one count of transporting illegal aliens. The government agreed to drop the other count, recommend a three-level reduction in the offense level for participation in the offense for reasons other than for profit, and recommended a sentence of no longer than 15 months. The statutory maximum for the offense is 60 months. 8 U.S.C. § 1324. The court ordered a presentence report, which calculated the offense level at 4 after deducting two levels for acceptance of responsibility and three levels for participation not for profit. In addition, the presentence report arrived at a criminal history category of VI because of six prior convictions for illegal entry. An offense level of 4 and a criminal history category of VI intersect at a sentencing range of 6–12 months. The presentence report recommended 12 months and noted that the court could consider that on at least three previous occasions appellant had engaged in high-speed chases while carrying illegal aliens.

In meting out a sentence of 30 months, the district court gave as reasons for the departure "the number of times this man has been involved in high speed chases when he has been apprehended for illegal smuggling .... So we have to get him off the highways." The court was careful to cite specific lines of the presentence report that mentioned several previous high-speed incidents to support its decision to depart.[1]

1. Because of its relevance, the district court's reasons for departure are produced here in full:

It's my intention to depart, depart up to three years in this case. I am advising you at the beginning of the hearing so that you will be advised. And the basis for the departure is outlined in the presentence report, the number of times that this man has been involved in high speed chases when he has been apprehended for illegal smuggling. I think he personally drove the car three times, and he directed someone else to drive it. So we have to get him off the highways. So that's the basis of the departure, unless you persuade me otherwise.

. . . . .

I would like to note for the record on page A of the presentence report, I haven't counted them out but I think this defendant has used some 25 names over the years to various agencies of the government, beginning in 1976 when he was arrested for illegal entry as a juvenile. In 1976, alien smuggling, he was given 90 days; 1978, assault of a federal officer, given six months; 1979, illegal entry, giv-

en 20 days; 1980, illegal entry, given 15 months; 1983, deported alien found in the United States, given 18 months. In that case he drove away at a very high rate of speed. In 1985, illegal entry, 100 days. In that case, he accelerated and fled. He drove across the highway/freeway median and drove northbound in the southbound lane; in '85, illegal entry. He was given 18 months. In that case, he was identified as giving instructions to the driver to evade arrest by driving at a high rate of speed.

In 1987, I gave him two years, and in that case he failed to yield the right of way. There was a high speed chase in which he drove for 15 minutes at speeds up to 100 miles an hour.

Now, he must be a very good driver in not having an accident. I have a responsibility to the people of the United States, to California, to get him off the highways. The price keeps going up. Various judges, including myself, have sentenced him. He doesn't seem to understand that he cannot come into the United States illegally, but basically he can't endanger the lives of United States citizens and

Perez–Magana appeals his sentence, claiming that this departure was unreasonable.

## STANDARD OF REVIEW

■ In reviewing a district court's departure from the Sentencing Guidelines, our circuit has used the standard of review enunciated in *United States v. Lira–Barraza*, 897 F.2d 981 (9th Cir.1990). *See, e.g., United States v. Todd*, 909 F.2d 395 (9th Cir.1990); *United States v. Gomez*, 901 F.2d 728 (9th Cir.1990). *Lira–Barraza*, however, has since been ordered to be reheard en banc. *Id.*, 909 F.2d 1370 (9th Cir.1990). The government suggests that we apply that standard here. Because even under that standard we are required to remand, appellant will suffer no harm as a result of our doing so. Accordingly, we can accept the government's suggestions without deciding whether the standard is indeed the correct one.

According to this standard, departures should be reviewed according to the following five-step process:

(1) whether the district judge adequately identified the "aggravating or mitigating circumstance" (hereinafter "circumstance");

(2) whether the identified circumstance actually existed;

(3) whether the circumstance was adequately taken into consideration by the Sentencing Commission,

(4) if not, whether the circumstance should result in departure; and,

(5) whether the extent or degree of departure was unreasonable.

*Id.* at 983. Appellant asks that our review center on the fifth issue—*i.e.*, whether the degree of the departure was unreasonable. We should do so under an abuse of discretion standard: "a district court abuses its

discretion if it imposes a sentence which is unreasonable." *Id.* at 986.

## DISCUSSION

Before moving to an analysis of the reasonableness of the *degree* of the district court's departure, we briefly explain why a departure was perfectly permissible in this case.

### A. Reasonableness of Departure

■ Appellant does not challenge the power of the district court to depart from the applicable guidelines. As the guidelines themselves make clear:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

U.S.S.G. § 5K2.0, p.s. Section 5K2.0 et seq. then identifies a number of factors that the Commission did not fully take into account in formulating the guidelines, such as the presence of a dangerous instrumentality. § 5K2.6. Further, if "national security, public health, or safety was significantly endangered, the court may increase the sentence" § 5K2.14. Even more directly to the point, the section on "Smuggling, Transporting, or Harboring an Unlawful Alien" notes, "The Commission has not considered offenses involving large numbers of aliens or dangerous or inhumane treatment. An upward departure should be considered in those circumstances." § 2L1.1, comment. (n.8).

The district court, therefore, could have departed upward on the rationale that the

others in the United States by these high speed chases.

. . . . .

Therefore, I am going to depart. I am going to depart. I will make it 30 months rather than three years. My basis for the departure is the presentence report, page 11, lines 36–47, page 6, lines 12–14—excuse me. That's page 5, line 47 [refers to 1983 arrest and high-speed

flight]; page 6, lines 12–14 [1985 arrest; acceleration and flight; driving across median]; page 6, lines 30–33 [second 1985 arrest; telling driver to evade police at high speed]; page 6, lines 51–52 [1987 arrest; failure to yield to police]; and page 7, lines 1–3 [1987 arrest and 100 m.p.h. chase]. And they basically outline all of those high speed chases.

car was a dangerous instrumentality, see U.S.S.G. § 5K2.6, that public safety was endangered by such reckless driving, *see* § 5K2.14, or that the alien passengers were subjected to dangerous treatment. See *United States v. Ramirez–DeRosas*, 873 F.2d 1177 (9th Cir.1989) (departure from guidelines warranted because high speed was both dangerous to alien passengers and an aggravating circumstance not taken into consideration by the commission); *United States v. Marco L.*, 868 F.2d 1121 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989) (court would have been justified departing for same two reasons).

Since the district court clearly articulated its reasons for departure—*i.e.*, the high-speed chases that endangered public safety—and since those reasons legitimately existed and were not considered by the Sentencing Commission, we hold that departure in this case was reasonable.

### B. Reasonableness of Degree of Departure

■ Perez–Magana concedes that the district court gave sufficient reasons for the departure itself; he also concedes the validity of those reasons. He does not, however, believe that the district court gave any explanation for the *degree* of departure. In other words, he asks what factors led the court to impose a 30–month sentence in lieu of a sentence of another, preferably shorter, length. Brandishing the guidelines' "Sentencing Table," appellant shows that in order to get a 30–month sentence, his offense level would have to jump from 4 to 10, a 250% increase in offense levels and a similar rise in months incarcerated. *See* Ch.5, Pt.A. He sees this as totally unreasonable, particularly in light of the district court's failure to give any reasons for the degree of its departure.[2]

In *United States v. Rodriguez–Castro*, 908 F.2d 438 (9th Cir.1990), the district court explained its departure thus: " 'The reason I am imposing that term [of 54 months, instead of 12–18] is primarily because of the high-speed chase, the names that you have given each time you have been apprehended in the criminal justice system, [and] the fact that you have been engaged in high-speed chases before.' " *Id.* at 440. After affirming and then withdrawing our initial opinion, we vacated the sentence and remanded for resentencing. We explained:

> Since the district court's departure was grounded in part on the inadequacy of Rodriguez–Castro's criminal history category, the court was obligated to justify the extent of its departure by analogy to the guideline sentences of defendants in a higher criminal history category. Instead, the district court, without saying why, imposed a prison term 36 months in excess of the maximum sentence appellant could have received under the guideline range calculated in the presentence report.

*Id.* at 443. The district court's departure was based in large part on the past high-speed chases. If the court did not feel that Rodriguez–Castro's criminal history category sufficiently accounted for this, it should have looked to the sentence in a higher category. A sentence in a higher criminal history category, but at the same offense level, would probably have yielded a range of months in the 20's.

In *United States v. Montenegro–Rojo*, 908 F.2d 425 (9th Cir.1990) (also withdrawn and resubmitted), the district court departed from a 6–12 month sentence and imposed one of 21 months. The court gave a lengthy reason for departing, cataloging past crimes and noting that it did not think " 'the adequacy of [the defendant's] criminal record has been really taken into account in the guidelines.' " *Id.* at 428.

---

2. We also note that an amendment effective November 1, 1990, created § 3C1.2, entitled "Reckless Endangerment During Flight," which reads: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase [the offense level] by 2 levels." Since this fits high-speed chases to a tee, were this section to apply in the present case, the level would be six and the sentence 12–18 months, still far shy of 30.

Once again we remanded for resentencing because the district court should have used the guideline range for a defendant with a higher criminal history category, instead of inventing its own sentence. Reasons for the degree of the departure were not adequately expressed.

A plethora of other cases also insists that courts state the reasons for the degree of their departure. *See United States v. Pearson,* 911 F.2d 186 (9th Cir.1990) (abuse of discretion where district court judge used his own past sentencing practices as analogy); *United States v. Todd,* 909 F.2d 395 (9th Cir.1990) (remand for failure to explain how court arrived at 34–month departure); *United States v. Richison,* 901 F.2d 778 (9th Cir.1990) (court must give reasons for degree); *United States v. Gayou,* 901 F.2d 746 (9th Cir.1990) (same); *United States v. Cervantes Lucatero,* 889 F.2d 916 (9th Cir.1989) (must give reasons); *United States v. Nuno–Para,* 877 F.2d 1409, 1414 (9th Cir.1989) ("we must hold that the district court's departure was unreasonable because it improperly relied on factors already considered by the guidelines").

In attempting to distinguish *Rodriguez–Castro* and *Montenegro–Rojo,* the government argues that here appellant was given a criminal history category of VI, which is the highest provided by the guidelines, though it encompasses vastly divergent criminal histories. In the two above cases, we could remand with instructions that the district court merely look to a higher criminal history category at the same offense level if it felt the existing one underrepresented the defendant's past crimes. We cannot suggest such a course here because the defendant is already at the highest criminal history category of VI.

Such an argument has some merit and draws us into waters as yet uncharted by this circuit. We are, however, not entirely bereft of navigational aids. As the guidelines explain:

> The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted.

§ 4A1.3, p.s. Unfortunately, the guidelines do not tell us where to look in such a case, and we share the Tenth Circuit's opinion that "determining the reasonableness of the degree of departure from category VI is troublesome." *United States v. Russell,* 905 F.2d 1450, 1456 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990).

Other circuits in such a dilemma have selected different options. Two solutions considered by the Seventh Circuit are to continue to extrapolate along the horizontal axis of criminal history categories, increasing by 10–15% over Category VI for each additional hypothetical category required, *United States v. Schmude,* 901 F.2d 555 (7th Cir.1990), or to read down vertically to higher offense levels since vertical increments are "identical" to horizontal ones. *United States v. Ferra,* 900 F.2d 1057, 1062 (7th Cir.1990). *See also United States v. Scott,* 914 F.2d 959, 965 (7th Cir.1990).

Though both are interesting approaches, other circuits have begged to differ. Says *Russell,* "[W]e are unwilling to improvise some mechanical extension of the criminal offense categories [*i.e.,* offense levels] as a means of extending the criminal history categories as was suggested in *United States v. Ferra." Id.* at 1456. More bluntly, *United States v. Roberson,* 872 F.2d 597, 607–08 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989), argues that "[a]rbitrarily moving to a new offense level when the highest criminal history category proves inadequate would skew the balancing of factors which the Commission created in the Sentencing Table." *Accord United States v. Bernhardt,* 905 F.2d 343, 345 (10th Cir.1990) ("no indication is ever given that movement between offense levels is appropriate when criminal history category VI is not adequate"). Though it has not garnered any

support outside the Seventh Circuit, the theory of moving horizontally to hypothetical higher criminal history categories has not precipitated the outcry that moving vertically has.

Faced with this array of contradictory material, one escape route would be to reiterate the sage advice of *United States v. Gardner*, 905 F.2d 1432, 1438 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990): "the criteria to use in departing upward from criminal history category VI will have to evolve under the tutelage of experience." Bearing this in mind, we will not endeavor to delineate overly particularized rules for district courts to follow; nevertheless, we feel obligated to shed some light on this crepuscular issue.

The most sensible approach may be found in a recent First Circuit opinion, *United States v. Ocasio*, 914 F.2d 330 (1st Cir.1990). After concurring with Fifth and Tenth Circuit cases in rejecting any bright-line rule, the court held: "Where valid grounds for departure are present, we will uphold the sentencing judge's resolution of the matter so long as the circumstances warranting the departure, and the departure's direction and extent, are in reasonable balance." *Id.* at 337 (citations omitted). *See also United States v. Whitehead*, 912 F.2d 448 (10th Cir.1990); *Bernhardt*, 905 F.2d at 346 (courts should use their own "judgment as to whether the sentence imposed is proportional to the crime committed, in light of the past criminal history"). *Ocasio* continued, and we highlight this advice, "To facilitate this inquiry, we suggest in the strongest terms that the *sentencing judge explain succinctly the reasons for the degree of departure* which he or she utilizes." *Id.* (emphasis added).

Where the degree of departure is unaccounted for, as in the present case, we are unable to assess the reasonableness of such a degree. Simply because the judge is departing from criminal history category VI does not permit him or her to avoid giving reasons. In this respect, this case does not differ from our voluminous Ninth Circuit precedent on degree of departure. Though we are loath to impose an excessive burden on the district courts, we must remand here so that the district court may give reasons for its degree of departure.

## CONCLUSION

We vacate the sentence imposed and remand to the district court for resentencing. If upon resentencing the district court departs from the sentencing range suggested by the Sentencing Guidelines, it must provide reasons for its degree of departure.

VACATED and REMANDED.