UNITED STATES of America,
Plaintiff–Appellee,

v.

Luis MONTENEGRO–ROJO,
Defendant–Appellant.

No. 89–50134.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1989.

Decided April 12, 1990.

Withdrawn July 11, 1990.

Opinion Filed July 11, 1990.

Shawn M. Hayes, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Judith S. Feigin, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HUG, HALL and WIGGINS, Circuit Judges.

## ORDER

The opinion filed April 12, 1990, is hereby WITHDRAWN. The opinion submitted herewith shall be filed in its stead.

## OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendant–Appellant Luis Montenegro–Rojo was convicted of illegal entry into the United States in violation of 8 U.S.C. § 1325(a) (1988). His sentence was governed by the Sentencing Reform Act of 1984 ("the Act"), 18 U.S.C. §§ 3551–3586 (1988). The district court departed upward from the sentence indicated by the Sentencing Guidelines ("the guidelines") and imposed a sentence of twenty-one months of imprisonment followed by one year of supervised release. Montenegro–Rojo argues on appeal that this departure was both inappropriate and unreasonable. In addition, he alleges that because his prison sentence, combined with his term of supervised release following incarceration, results in a total sentence of thirty-one months, it exceeds the statutory maximum of two years of imprisonment set by 8 U.S.C. § 1325(a) (1988) and is therefore illegal.

Although we believe that the district court identified permissible grounds for departure in this case, we must remand for resentencing because the court failed to explain how it arrived at the degree of its departure. We further hold that the district court was authorized to impose a term of supervised release that, when added to Montenegro–Rojo's term of imprisonment, resulted in a final sentence in excess of the maximum term of imprisonment authorized for illegal entry under 8 U.S.C. § 1325 (1988).

### I

On March 21, 1988, appellant was stopped by Border Patrol officers on a San Diego trolley. He ran from the officers, but was caught as he attempted to climb a fence. A struggle ensued and appellant grabbed a piece of wood from the fence

two inches wide and four feet long and struck one of the ·agents, who suffered only minor cuts requiring no medical treatment. The wood was embedded with nails. Appellant was charged with assault on a federal officer and illegal entry. The first charge was dismissed, and on May 9, 1988, appellant pled guilty to the charge of illegal entry in violation of 8 U.S.C. § 1325 (1988).

The presentence report stipulated that the sentencing range in this case was from six to twelve months.[1] The probation officer recommended the maximum twelve months in view of the defendant's prior arrest history and his "violent opposition to being arrested." Counsel for defense and the government concurred in recommending the maximum sentence under the guidelines. Nonetheless, the sentencing court did not follow the guidelines and instead departed upward, imposing a sentence of twenty-one months of imprisonment and one year of supervised release.

## II

We review a district court's decision to depart from the sentencing guidelines under a five-step analysis. *See United States v. Lira–Barraza*, 897 F.2d 981, 983 (9th Cir.1990). First, we determine whether the district court adequately stated its reasons for departure, making sure that the court not only identified the specific aggravating or mitigating circumstances warranting departure, but found that the Sentencing Commission ("the Commission") did not adequately consider these circumstances. *Id.* at 983–84. Second, we review under the clearly erroneous standard whether the

factual circumstances listed by the district court as supporting departure actually existed. *Id.* at 984. Third, we review de novo the district court's decision that the aggravating or mitigating circumstances were of a kind not adequately considered by the Commission within the meaning of 18 U.S.C. § 3553(b). *Id.* at 984–85.[2] Only if we agree with the district court do we reach the fourth step, where we review under the abuse of discretion standard the district court's decision to depart based on the identified circumstances. *Id.* at 985. Fifth, we determine whether the departure is "unreasonable" within the meaning of 18 U.S.C. § 3553(c), an inquiry which requires us to employ the abuse of discretion standard. *Id.* at 986.

## III

The first step in our review recognizes that when a sentencing court chooses to depart from the guidelines, the Act requires the court to state its "specific reason" for so doing. 18 U.S.C. § 3553(c)(2) (1988); *see United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989). When reviewing the sentence, we must consider the reasons for departure actually articulated by the sentencing court. *Id.* § 3742(e)(3)(B); *see United States v. Cervantes–Lucatero*, 889 F.2d 916, 918 (9th Cir.1989); *Wells*, 878 F.2d at 1233. In *United States v. Michel*, 876 F.2d 784 (9th Cir.1989), for instance, we vacated a sentence that departed upward because the district court gave only a "conclusory statement of reasons" for departure that "fail[ed] to clearly identify the specific ag-

---

1. The sentencing range is determined by computing a base offense level and a criminal history category and then cross-referencing them in the sentencing table. United States Sentencing Commission, *Guidelines Manual* Ch. 5, Part A (1989). Appellant received a base offense level of 8 as stipulated by guideline § 2L1.2. Because of his acceptance of responsibility, two levels were subtracted, leaving a final base level of 6. His criminal history was calculated at 7 points, placing him at the low end of Category IV. The 7 points consisted of 4 points for prior convictions of misdemeanor illegal entry and burglary, 2 points for committing the offense while on probation, and 1 point for an offense within two

years of release. A Category IV criminal history and a base offense level of 6 compute a guideline range of 6–12 months.

2. We specifically declined to address whether departures predicated on the existence of circumstances already accounted for by the guidelines yet present to a significantly greater degree than contemplated by the Commission are subject to the same de novo review in this step. *See id.* at 985 n. 8. Since the present case does not involve such a so-called "degree" departure, we need not address this question today.

**428**

gravating circumstances present in the case." 876 F.2d at 786.

On review, then, we do not search the record for permissible reasons for departure; instead, we analyze the reasons actually given by the district court. These reasons must be sufficiently specific to allow this court to conduct a meaningful review. *Wells,* 878 F.2d at 1233. Moreover, if the fourth step in our analysis reveals that the district court considered both proper and improper bases for departure, "we have no way to determine whether any portion of the sentence was based upon consideration of the improper factors," *United States v. Nuno–Para,* 877 F.2d 1409, 1414 (9th Cir.1989), and must therefore vacate the sentence and remand for resentencing. *See also Cervantes–Lucatero,* 889 F.2d at 919; *United States v. Hernandez–Vasquez,* 884 F.2d 1314, 1315–16 (9th Cir.1989). In the instant case the district court at sentencing provided a detailed rationale for departing from the guidelines:

> This is why I think departure is appropriate in your case.
>
> People have tried to use the trolley here as some means of transportation back and forth, and I think that you have misused its facility on many occasions over a considerable period of time.
>
> I look at your record here, and I note that you have previous burglaries here. When you were arrested, you give fictitious names. When you are placed in jail, you are involved in fights and trouble. You hit an officer with a two-by-four when you were confronted in this instance. You resisted arrest. You fought with the officers. You had several confrontations on the trolley.
>
> You have had seven voluntary returns, and, as I say, several incidents there on the trolley. You acted as guides for other aliens on the trolley. As I read this, you appear to be a very street-wise young man. At age 20, you are really

> going on age 45. I think you are a menace to a lot of people who use the trolley. I think you are a menace to a lot of the community people here in San Diego. I think you have had plenty of warnings all the way through. I think you have had the course. So, as far as I am concerned, I don't have much sympathy for you, Mr. Montenegro.
>
> I am going to depart upward in the guidelines for the reasons set out in this probation report, and they would be essentially the assault that would cause physical injury. I don't think the adequacy of your criminal record has been really taken into account in the guidelines. I think that the arrest on July 5 for battery on a person, the fair [sic] evasion at that time, is so similar to this incident that I think it is just a repetitive pattern. I think you were confronting a female trolley officer in such a stance that, even though there was no injury inflicted, I don't think they pay enough money to go through that kind of business. So you didn't appear on that case for all those reasons, as set out in the probation report.
>
> I don't think that the guideline sentence adequately deals with the circumstances in your individual case. We have been told that, if that is so, that we may depart, and I think, if there is ever a case for departure, it's in your case. So, in your case, I am going to depart and impose a term of 21 months, Mr. Montenegro, and supervised release for a period of one year.

Pursuant to the second step of our analysis, we conclude that the facts found by the district court based on the presentence report do not strike us as clearly erroneous. Indeed, Montenegro–Rojo only disputes the court's finding that he struck the officer with a wooden board, although he fails to point to anything in the record other than this bare contention in support of his denial.[3] Moreover, these facts pro-

---

**3.** Montenegro–Rojo insists that he did not assault the officer, and that consequently the sentencing court was faced with a factual dispute requiring it to "provide a reasonable opportuni-

ty for the submission of oral or written objections before imposition of sentence." *Sentencing Guidelines* § 6A1.3(b). But appellant apparently never asked the sentencing judge for such

vide ample justification for the court's departure from the guidelines on the bases of Montenegro–Rojo's criminal history and his resisting arrest for the instant illegal entry.

### A

■ As for criminal history, the court in part relied on the previous burglary conviction in appellant's record.[4] By itself, this conviction is unremarkable and is adequately taken into account by the criminal history category contained in the guidelines. Yet the court specified what it thought unusual about the conviction: that Montenegro–Rojo had provided authorities with fictitious names [5] and that he had had disciplinary trouble while incarcerated. We agree that these factors help make Montenegro–Rojo's case one sufficiently atypical to satisfy the third step in our review. In particular, the fact that appellant had disciplinary problems in jail after being convicted of burglary was something that the judge who originally sentenced him for the burglary could not have been expected to foresee. Thus, it is almost impossible that Montenegro–Rojo's burglary sentence took account of the possibility that appellant would be involved in numerous prison fights. Since these factors constitute blameworthy conduct independent of the elements of burglary, we are not prepared to rule that the district court abused its discretion under step four of our review by using them as a basis for departure.

Similarly, we agree with the district court that appellant's past incidents on the trolley rendered his criminal history unusual under the third step of our review and justified departure under the fourth step. The presentence report, which the district judge incorporated by reference into his own remarks, indicates that in addition to the burglary conviction, appellant was convicted once before of illegal entry, and that the circumstances surrounding that entry, like those surrounding the entry for which Montenegro–Rojo was sentenced below, involved misconduct on a San Diego trolley. On the day of his previous arrest for illegal entry, Montenegro–Rojo appeared to be repeatedly acting as a guide for other illegal aliens on the trolley. The district judge was correct to place this incident within the context of repeated, unusual trolley incidents justifying departure from the guidelines. As the Fifth Circuit has noted:

> The recidivist's relapse into the same criminal behavior demonstrates his lack of recognition of the gravity of his original wrong, entails greater culpability for the offense with which he is currently charged, and suggests an increased likelihood that the offense will be repeated yet again. While the prior similar adult criminal conduct that has resulted in conviction may have already been counted under section 4A1.2(e)(1) or (2) when computing the criminal-history category, the similarity between the two offenses provides the district court with additional reason to enhance the sentence under section 4A1.3.

an opportunity; indeed, the sentencing hearing itself represented a missed opportunity for appellant's attorney to contest the presentence report's findings. In sum, the record merely reveals that Montenegro–Rojo disputed the presentence report's description of an assault with a two-by-four. Accordingly, it was not error for the court to side with the report and find that the assault had in fact taken place. *See United States v. Rigby*, 896 F.2d 392, 394–95 (9th Cir. 1990); *United States v. Acosta*, 895 F.2d 597, 600–01 (9th Cir.1990). Moreover, the opportunity to present information only arises under guideline § 6A1.3 when a factor is "reasonably in dispute." *Id.* § 6A1.3(a). Here, the presentence report's detailed description of the events surrounding Montenegro–Rojo's arrest so outweighed Montenegro–Rojo's bare contention that the event never transpired that whether the assault actually took place was never "reasonably" in dispute.

**4.** Although the district judge referred to "burglaries," the presentence report reveals only one burglary conviction. The court's use of the plural was not meant to suggest that appellant had multiple convictions; it attempted to underscore the fact that the one conviction apparently was premised on two discrete instances of burglary.

**5.** The presentence report reveals that appellant was tried and convicted of burglary under the alias Siboney Brizuela–Balboa.

*United States v. De Luna–Trujillo,* 868 F.2d 122, 125 (5th Cir.1989).[6]

Additionally, the court placed particular reliance on the July 5 arrest for battery on a person and fare evasion, for which an outstanding bench warrant remains in light of appellant's failure to appear. Appellant's repeated trolley misconduct poses a threat to citizens of San Diego who rely on the trolley for transportation, as well as to trolley officers, that simply is not reflected in his criminal history category. Indeed, the guidelines specifically allow for departure based on "prior similar adult criminal conduct not resulting in a criminal conviction." United States Sentencing Commission, *Guidelines Manual* § 4A1.3(e) (1989) [hereinafter Sentencing Guidelines]. And although Montenegro–Rojo claims that the guidelines prohibit departure based on prior voluntary returns,[7] the judge's statement reveals that he was interested in the returns only to the extent they led to highly particularized, repetitious trolley misconduct.

## B

■ Montenegro–Rojo's assault on a border patrol officer while resisting arrest for the illegal entry for which he was sentenced below provided the sentencing court with its second major reason for departing from the guidelines. Appellant argues that the guidelines for illegal entry implicitly take into account the possibility that a defendant will resist arrest or even assault an arresting officer. But he offers no evidence that the guidelines do take such circumstances into account other than the fact that the Commission established the base offense levels by examining ten thou-

sand presentence reports, some of which must have revealed assaults similar to the one alleged here. Surely, appellant argues, the Commission must have set the guideline for illegal entry in light of these aggravating circumstances. This is pure speculation. The elements of illegal entry do not speak to assault or resisting arrest. *See* 8 U.S.C. § 1325(a) (1988). Since this is conduct substantially different from the offense itself, we conclude under the third step of our review that the district court correctly identified a circumstance not adequately taken into account by the Commission. Moreover, the district court obviously did not abuse its discretion pursuant to the fourth step of our review by justifying its departure on the basis of this conduct, since it reveals appellant to be dangerous.

Appellant also argues that the injury inflicted on the border patrol officer was not significant enough to warrant departure. In support of this contention, he cites guideline § 5K2.2, which explicitly allows for departures "[i]f significant physical injury resulted." Yet it appears that the sentencing judge was not relying on this guideline. His characterization of the assault as one that "would cause physical injury," coupled with his earlier reference to appellant hitting the officer with a two-by-four, support departure based on use of a dangerous instrumentality pursuant to guideline § 5K2.6.

## IV

■ Having satisfied ourselves that the district court's decision to depart from the guidelines was based upon consideration of permissible factors, we now must ascertain

---

**6.** The language quoted from the *De Luna–Trujillo* opinion could alternatively support a departure pursuant to Sentencing Guidelines § 5K2.0: the very fact that the defendant continued to act in a way previously adjudicated to be wrongful somehow makes him more blameworthy the second time around. Moreover, it suggests that the defendant is likely to engage in illegal conduct yet again, which would justify departure based on endangerment of public safety. *See* Sentencing Guidelines § 5K2.14.

**7.** Commentary to the guidelines provides that "[i]n the case of a defendant with repeated prior

instances of deportation without criminal conviction, a sentence at or near the maximum of the applicable guideline range may be warranted." Sentencing Guidelines § 2L1.2 application note 2, at 2.112. Of course, this statement does not explicitly forbid a court from departing when the number of returns becomes very large. *See generally* Sentencing Guidelines § 5K2.0 (Policy Statement) at 5.42 (explaining that a factor listed in the guidelines as an adjustment can nonetheless support departure in an unusual case).

whether the degree of departure was reasonable pursuant to the fifth step of our review. A departing "district court must state its reasons for the direction and the *degree* of its departure," *Lira–Barraza,* 897 F.2d at 986 (emphasis added). The court below failed to comply with this requirement when it sentenced appellant to a prison term of twenty-one months, nine months in excess of the maximum term he could have received according to the pre-sentence report's stipulated sentencing range. Accordingly, we must remand for resentencing on this basis, particularly in light of the fact that the court's departure was partially predicated upon the inadequacy of Montenegro–Rojo's criminal history category.

▮ The guidelines themselves state that a court departing on the basis of the inadequacy of a defendant's criminal history category should "use, as a reference, the guideline range for a defendant with a higher ... criminal history category." Sentencing Guidelines § 4A1.3 (Policy Statement) at 4.9. We have previously remanded for resentencing in part because a district court failed to comply with this requirement of justifying the degree of its departure by analogy. *See Cervantes–Lucatero,* 889 F.2d at 919. Since the district court's departure in this case was partially based upon the inadequacy of Montenegro–Rojo's criminal history category, we must remand in this case as well.[8]

The district court's analogy on remand need only be "reasonable." Appellant has no right to use of any particular analogy. Nonetheless, we believe that the district court would do well to consider an argument appellant presents to this panel, if it indeed proves true. Montenegro–Rojo claims that even if he had been convicted of fare evasion and battery in connection with the July 5, 1986 trolley incident, his criminal history calculation would be the same as it was in the presentence report stipulation. How, then, he asks, can the lack of a conviction in regard to this incident result in a departure from the guidelines?

## V

▮ Montenegro–Rojo also alleges that his sentence is illegal because the twenty-one months of imprisonment added to the one year of supervised release he received below equals a total punishment lasting thirty-one months, which is seven months longer than the two-year maximum term of imprisonment authorized for illegal entry under 8 U.S.C. § 1325 (1988). His argument rests on the fact that federal courts may only impose criminal punishments that are provided for by federal statute. *United States v. Best,* 573 F.2d 1095, 1101 (9th Cir.1978). But this argument fails to consider the possibility that a different statute, namely 18 U.S.C. § 3583(a) (1988), itself authorizes a term of supervised release

---

**8.** The fact that Montenegro–Rojo has already served the full amount of his prison term does not render our remand moot. In the first place, his sentence may still have collateral consequences. *See United States v. Drabeck,* 905 F.2d 1304, 1305, n. 1 (9th Cir.1990); *cf. United States v. Kincaid,* 898 F.2d 110, 111–12 (9th Cir.1990). For instance, as things now stand, if Montenegro–Rojo is convicted of a future crime, 3 points will automatically be added to his criminal history category at that point because the district court in this case sentenced him to a prison term in excess of 13 months. *See* Sentencing Guidelines § 4A1.1(a). But since it is possible that on remand the district court will conclude that it cannot justify the extent of its departure from the guidelines with reference to a suitable analogy, the court might decide not to depart nearly as much. If the court were to revise its departure to a 13–month prison term, Sentencing Guidelines § 4A1.1(a) would not be implicated in the future.

It is even possible that our remand will have a direct effect on Montenegro–Rojo's sentence. Montenegro–Rojo's year of supervised release does not expire until September 28, 1990. If the district court decides to shorten the extent of its departure, the extra time Montenegro–Rojo spent in jail should, in fairness, be counted towards the year of supervised release. Incarceration, after all, is surely even a severer punishment than supervised release.

We note, however, that on remand the district court may not shorten the year of supervised release outright. For if the district court departs at all from the guideline sentence of 6 to 12 months imprisonment, a full year of supervised release becomes mandatory pursuant to Sentencing Guidelines § 5D1.2(b)(3) because illegal entry is a Class E felony. *See* 8 U.S.C. § 1325; 18 U.S.C. § 3559(a)(5).

in addition to a maximum term of imprisonment under § 1325.

The relevant portion of § 3583(a) provides that a "court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, *may include as a part of the sentence* a requirement that the defendant be placed on a term of supervised release after imprisonment." *Id.* (emphasis added). Appellant contends that this provision merely gives a sentencing court discretion to convert a portion of a term of imprisonment already authorized by a substantive criminal statute into a period of supervised release. We think the statute is better read as giving a sentencing court the option to tack a period of supervised release onto any term of imprisonment authorized by a substantive criminal statute, even a term near or at the maximum.[9]

First, although the statute under which Montenegro–Rojo was convicted provides for felony punishment by "imprisonment for not more than two years," 8 U.S.C. § 1325 (1988), the supervised release statute allows a court to include such a period "as a part of the *sentence*," not "as part of the *imprisonment* [authorized by a substantive criminal statute]." This usage implies that a period of supervised release is to be imposed in addition to any incarceration authorized by a particular substantive criminal statute.[10] Second, appellant's reading of § 3583(a) contravenes the intent

of Congress as expressed in the legislative history. In passing § 3583, Congress sought to replace a parole system in which the length of post-incarceration supervision was dependent upon the length of the original prison term with a supervised release system in which the length of such supervision is dependent solely on the defendant's need for supervision after release from jail:

> Under current law, both the length of time that a defendant may be supervised on parole following a term of imprisonment and the length of time for which a parolee may be reimprisoned following parole revocation are dependent on the length of the original term of imprisonment.
>
> Under 18 U.S.C. 4210(a), a parolee remains in the legal custody and under the control of the Attorney General until the expiration of the maximum term or terms of imprisonment to which he was sentenced. Thus, the smaller percentage of his term of imprisonment a prisoner spends in prison, the longer his period of parole supervision. The jurisdiction of the Parole Commission may be terminated by operation of law at an earlier date under 18 U.S.C. 4210(b) if the defendant was released as if on parole at the end of his term of imprisonment less credit toward good time and there are less than 180 days of the term of imprisonment remaining....

9. Appellant also argues that supervised release can amount to incarceration. He points to § 3583(d), which authorizes a sentencing court to order as a condition of supervised release certain items from the provision dealing with conditions of probation, including that the defendant "reside at, or participate in the program of, a community correction facility ... for all or part of the time of probation." 18 U.S.C. § 3563(b)(12) (1988). He might just as well have pointed to § 3583(e)(4), which grants the court authority to extend, modify, or revoke a period of supervised release and require the defendant to serve all or part of the release term in prison. Yet if, as we hold, § 3583 itself provides authorization for periods of supervised release in excess of the maximum imprisonment terms of specific criminal statutes, it also implicitly provides authorization for periods of supervised release in excess of the maximum imprisonment terms of specific criminal statutes, it also implicitly provides authorization for any such supervised release time spent in jail. In any event, since this argument describes a hypothetical situation that has not yet occurred

in appellant's case, he lacks standing to argue it now.

10. To support the opposite reading, appellant contrasts the language of § 3583, which authorizes a period of supervised release "as part of the sentence," with the language of two substantive criminal statutes, which mandate a period of supervised release "in addition to [the] term of imprisonment." *See* 21 U.S.C. § 960(b)(1) (1988); *id.* § 841(b). Yet this analysis actually works against Montenegro–Rojo. For § 3583(a), in addition to granting sentencing courts the option to impose a period of supervised release, states that "the court shall include *as a part of the sentence* a requirement that the defendant be placed on a term of supervised release if such a term is required by statute." 18 U.S.C. § 3583(a) (1988) (emphasis added). Since a term of supervised release *is* required by 21 U.S.C. § 961 and 21 U.S.C. § 841, it is obvious that Congress used the phrase "as a part of the sentence" synonymously with the phrase "in addition to such term of imprisonment."

Under current law, the question whether a defendant sentenced to a term of imprisonment in excess of one year will be supervised on parole following release is dependent on whether or not the defendant is released on good time or on parole with more than 180 days remaining of his prison term. It is not dependent on whether the defendant needs supervision following release....

....

....

[The new law] permits the court, in imposing a term of imprisonment for a felony or a misdemeanor, to include as part of the sentence a requirement that the defendant serve a term of supervised release after he has served the term of imprisonment. Unlike current parole law, the question whether the defendant will be supervised following his term of imprisonment is dependent on whether the judge concludes that he needs supervision, rather than on the question whether a particular amount of his term of imprisonment remains....

... The length of the term of supervised release will be dependent on the needs of the defendant for supervision rather than, as in current law, on the almost sheer accident of the amount of time that happens to remain of the term of imprisonment when the defendant is released....

S.Rep. No. 225, 98th Cong., 2d Sess. 122–24 [hereinafter *Senate Report*], *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3305–07.

Congress effectuated this change because under the parole system the anomalous situation could arise whereby a defendant in great need of post-incarceration supervision would get little whereas a defendant who did not need such supervision would get a great deal. Indeed, this disparity was almost assured by the parole system: better-behaved inmates, who presumably could handle life outside of prison on their own reasonably well, left prison sooner than worse-behaved inmates, but as a consequence were supervised for longer periods on the outside. *See Senate Report* at 123, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3306 ("[A] defendant who needs supervision may have had such a

poor disciplinary record in prison that he has less than 180 days of good time; a defendant who needs no supervision may have served only one-third of an unusually long sentence.").

The new statute requires a sentencing court contemplating a term of supervised release to consider some of the same factors a court must weigh when imposing a sentence generally. *See* 18 U.S.C. § 3583(c) (1988). These include "the nature and circumstances of the offense and the history characteristics of the defendant," *id.* § 3553(a)(1); "the need for the sentence imposed—to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(B)–(C); and most tellingly, "the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the [sentencing] guidelines," *id.* § 3553(a)(4). In short, factors to be considered in imposing a term of supervised release include the dangerousness of the defendant as well as the severity of the term of imprisonment already imposed on the defendant. Thus, at least some of the defendants most in need of supervised release are those who receive prison terms at or near the maximum allowed by an individual criminal statute. Yet appellant's reading of § 3583, oddly enough, would foreclose the possibility of giving these very defendants supervised release time at all, since any time added to a maximum prison term by definition exceeds that prison term.

Moreover, appellant's reading of the statute would keep the period of allowable supervision tied to the amount of time spent in jail: the most supervision a judge could impose would be the maximum jail term authorized by the relevant criminal statute minus the jail term actually mandated by the guidelines. Yet Congress did not want the period of supervised release to be related to the term of imprisonment. *See Senate Report* at 123, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3306 ("The term of supervised release would be a *separate part* of the defendant's sen-

tence, rather than being the end of the term of imprisonment.") (emphasis added). This is only possible if a sentencing judge is free to impose a period of supervised release regardless of the length of time of the defendant's prison term.

It is also impossible to square Montenegro–Rojo's reading of § 3583 with the guidelines. Although the statute gives a sentencing court discretion to impose a period of supervised release, the guidelines *mandate* a sentencing court to order such a period whenever it imposes a prison term in excess of one year. Sentencing Guidelines § 5D1.1(a). If appellant's reading of § 3583 controlled, however, the result would be that a court could never impose the maximum prison term authorized by a particular criminal statute, and in turn by the guidelines themselves. In effect, then, appellant argues that § 3583 indirectly reduces the maximum prison terms allowed by particular criminal statutes and the guidelines. Surely if this had been Congress's goal, it would have said so openly.

Our conclusion is not without precedent. Under the terms of the now-repealed probation statute, a court could "suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best." 18 U.S.C. § 3651 (repealed 1984, effective 1987). This provision was interpreted by courts to permit combined periods of imprisonment and probation in excess of the statutory maximum term of imprisonment allowable for the crime charged. *See United States v. Nunez*, 573 F.2d 769, 770–72 (2d Cir.), *cert. denied*, 436 U.S. 930, 98 S.Ct. 2828, 56 L.Ed.2d 774 (1978), *cited in United States v. McCrae*, 714 F.2d 83, 85 n. 1 (9th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983); *see also United States v. Wickenhauser*, 710 F.2d 486, 487

(8th Cir.1983). Additionally, one recent decision from the Sixth Circuit assumes the very conclusion about § 3583 we adopt today. *See United States v. Vanover*, 888 F.2d 1117, 1119 (6th Cir.1989) (rejecting defendant's argument that sentencing judge failed to inform him that he could be sentenced to a combined period of imprisonment and supervised release greater than the statutory maximum prison sentence for the substantive offense).[11] Indeed, the Commission itself explicitly reached this conclusion in an unofficial pamphlet. United States Sentencing Commission, *Questions Most Frequently Asked About the Sentencing Guidelines* 6 (Nov. 30, 1988) (Question 16) ("[A] term of supervised release was intended as separate from, *and in addition to*, the statutory maximum penalty for the offense.") (emphasis added).

## VI

Appellant's sentence is AFFIRMED IN PART, and VACATED and REMANDED in part.

---

11. We have even recently hinted at the conclusion we adopt today. In a case involving the mandatory supervised release provision of 21 U.S.C. § 841(b) (1988), which admittedly uses the unambiguous phrase "in addition to [the] term of imprisonment," we stated rather more broadly: "Pursuant to 18 U.S.C. § 3583(e)(2), a supervised release term may also be extended, potentially to a life term, at any time before it

expires." *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 209 (9th Cir.1988). This would apparently hold true regardless of the maximum prison term authorized by the substantive criminal statute under which the defendant had been convicted.