956 F.2d 1168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Baltazar CORTEZ-MARTINEZ, Defendant-Appellant.
 No. 91-50104.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 5, 1991.
Decided March 4, 1992.
 
 Before JAMES R. BROWNING, FERGUSON and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Baltazar Cortez-Martinez appeals his sentence under the United States Sentencing Guidelines for conspiracy to transport undocumented aliens in violation of 18 U.S.C. § 371. We reverse and remand for resentencing.
 
 BACKGROUND
 
 3
 On October 6, 1990, Porfiro Hernandez-Bonilla reported to the Los Angeles Police Department that smugglers were holding his girlfriend, Maria Campos-Membreno, at an undocumented alien drop house in Rowland Heights, California, and would not release her until they were paid $3,000.
 
 
 4
 With the cooperation of Hernandez-Bonilla, Immigration and Naturalization Service agent Anthony Ramirez arranged a meeting with the smugglers for payment of the $3,000 and delivery of Campos-Membreno. The defendant, Baltazar Cortez-Martinez, arrived at the meeting in his car, driven by Leonardo Flores-Villalobos and containing six aliens, including Campos-Membreno. He was arrested. In the course of his arrest, Cortez-Martinez attempted to destroy a piece of paper listing the names of the aliens who were with him, the drop-off point for each, and the money he expected to receive.
 
 
 5
 After the arrest, Agent Ramirez interviewed Campos-Membreno and the other aliens who had been in the car. They told him that as many as seventy aliens had been held at the drop house and that they had never seen Cortez-Martinez before that day, when he came to the house to pick them up. Ramirez determined that the telephone and utilities at the house were in Cortez-Martinez's name, but did not determine who owned or rented the house.
 
 
 6
 Cortez-Martinez was indicted for conspiracy to harbor and transport undocumented aliens, 18 U.S.C. § 371, transporting undocumented aliens, 8 U.S.C. § 1324(a)(1)(B), and harboring undocumented aliens, 8 U.S.C. § 1324(a)(1)(C). Pursuant to a plea agreement, Cortez-Martinez pled guilty to the first count (conspiracy) in exchange for dismissal of the remaining two counts. The district court sentenced Cortez-Martinez to sixteen months in prison followed by three years of supervised release and an assessment of $50.
 
 DISCUSSION
 I. Factual Findings
 
 7
 Cortez-Martinez contends that the district court based its sentence on factual findings that are clearly erroneous. The record demonstrates that the district court believed (1) Cortez-Martinez obstructed justice, (2) Cortez-Martinez did not accept responsibility for his actions, (3) Cortez-Martinez exercised control over the drop house, and (4) the offense involved a large number of aliens. We review each finding in turn.
 
 
 8
 We review de novo the district court's application of the Sentencing Guidelines. United States v. Lawrence, 916 F.2d 553, 554 (9th Cir.1990).
 
 
 9
 We review the district court's findings of fact for clear error. United States v. Quan-Guerra, 929 F.2d 1425, 1426 (9th Cir.1991). A determination that the defendant obstructed justice is a factual finding, United States v. Christman, 894 F.2d 339, 342 (9th Cir.1990), as is a determination that the defendant has not accepted responsibility, United States v. Sanchez, 908 F.2d 1443, 1450 (9th Cir.1990). In making a factual determination underlying application of the guidelines, the sentencing "judge [must] be convinced 'by a preponderance of the evidence that the fact in question exists.' " United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991) (en banc).
 
 A. Obstruction of Justice
 
 10
 In finding that the defendant obstructed justice, the court relied on Cortez-Martinez's attempt, at the time of his arrest, to destroy the list of aliens he was to deliver. The finding that Cortez-Martinez obstructed justice was clearly erroneous. The Sentencing Guidelines provide for a two-level upward adjustment if the defendant attempts to destroy evidence, but provides that "if such conduct occurred contemporaneously with arrest ... it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender[.] " United States Sentencing Commission, Guidelines Manual, § 3C1.1, comment. (n. 3(d)) (Nov. 1990). Hence, without more, the defendant's attempt to destroy the list at the time of his arrest does not constitute obstruction of justice.
 
 
 11
 We fail to find sufficient other evidence to support the finding that the defendant obstructed justice. Cortez-Martinez told the probation officer and the court that before the day of his arrest, when he picked up the aliens for delivery, he had never visited the drop house and was unaware that it was being used to smuggle aliens. The government argues that because the utilities and telephone at the house were in the defendant's name, Cortez-Martinez must have been lying. We disagree. While this evidence is mildly probative, it does not, by itself, prove under the preponderance standard that the defendant lied when he said that he had never been to the drop house before the day of his arrest and did not know the purpose for which it was being used.
 
 
 12
 Furthermore, other evidence supported the defendant's statements. Cortez-Martinez explained at the sentencing hearing that his friend, Fernando Ochoa, had asked him to put the utilities in his name as a favor because Ochoa lacked the documentation to put them in his own name. Cortez-Martinez also testified that until the day of his arrest, when he first visited the house, he did not know that the house was being used to smuggle aliens; that on that day he agreed to deliver the aliens only because he was unemployed and needed money; and that in order to put the utilities and telephone in his name, he needed only his driver's license. Although the court expressed skepticism regarding Cortez-Martinez's claim that he put the utilities and telephone in his name without visiting the house, the government made no attempt to investigate the utility or telephone companies' procedures for providing service.
 
 
 13
 Nothing in Cortez-Martinez's testimony was inconsistent or demonstrated that he was lying. The sole fact that the utilities at the drop house were in his name does not establish under the preponderance standard that he lied. The factual determination that the defendant obstructed justice cannot stand.
 
 B. Acceptance of responsibility
 
 14
 The district court also found that Cortez-Martinez did not accept responsibility for his actions. The Sentencing Guidelines provide for a two-level downward adjustment "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." U.S.S.G. § 3E1.1. The Guidelines explain: "Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n. 3).
 
 
 15
 Cortez-Martinez entered a guilty plea and admitted his involvement in the offense. Hence, he is entitled to a downward adjustment unless the district court found evidence of conduct inconsistent with acceptance of responsibility. Furthermore, the presentence report also recommended a two-level downward adjustment for acceptance of responsibility.
 
 
 16
 The Guidelines provide that a sentencing judge's determination regarding a defendant's acceptance of responsibility is entitled to great deference. U.S.S.G. § 3E1.1, comment. (n. 5). However, "[f]or us to defer to a trial court's acceptance of responsibility determination, the record on this issue must be clear." United States v. Brady, 928 F.2d 844, 848 (9th Cir.1991) (footnote omitted). In Brady, where the district court simply stated that the defendant had not accepted responsibility but did not articulate the reasons for its finding, we vacated the sentence and remanded the case. Id. at 848. In the present case, as in Brady, the district court found that the defendant had not accepted responsibility, but did not state the facts on which it based its finding.
 
 
 17
 The government contends that the district court's rationale for denying the adjustment for acceptance of responsibility is obvious from the record: since the court found that the defendant obstructed justice, it would not also find that he accepted responsibility. See U.S.S.G. § 3E1.1, comment. (n. 4). Even if we accept the government's explanation, however, we must still vacate and remand because the obstruction of justice finding was clearly erroneous.
 
 C. Exercise of control over the drop house
 
 18
 The district court did not specify what facts it relied on in concluding that the defendant exercised control over the drop house. Moreover, the record is devoid of any evidence to support such a finding. The court seems to have reasoned that because the utilities were in the defendant's name, the defendant was aware of the activities at the drop house and hence exercised control over it. This leap of inference cannot satisfy the preponderance test. Based on the record, we determine that the district court's conclusion that the defendant exercised control over the drop house is clearly erroneous.
 
 
 19
 The record also does not tell us how this factual finding affected the final sentence. Section 3B1.1(c) of the Guidelines provides for a two-level upward adjustment if the defendant played a leadership role in the offense. U.S.S.G. § 3B1.1(c). However, neither the court nor the government referred to this section at the sentencing hearing.
 
 
 20
 D. Offense involved a large number of aliens
 
 
 21
 The district court also found that Cortez-Martinez's offense involved a large number of aliens. This finding is proper. The court based its finding on uncontroverted testimony that seventy aliens were being held at the house. Even if the defendant was unaware of the activities at the drop house before the day of his arrest, he became aware that such activities involved large numbers of aliens when he visited the house and saw many people there. Hence, the district court's finding meets the preponderance standard.
 
 II. Application of Sentencing Guidelines
 
 22
 Cortez-Martinez contends that the district court failed to identify the sentencing categories under which it imposed his sentence. This is a question of law which we review de novo. United States v. Upshaw, 918 F.2d 789, 792 (9th Cir.1990), cert. denied, 111 S.Ct. 1335 (1991).
 
 
 23
 At the beginning of the sentencing hearing, the court stated that it proposed to "depart upward," possibly based on obstruction of justice. It then commented, without explaining the significance of its remark, that the number of aliens involved in the case was beyond that contemplated by the Guidelines. The Guidelines provide for an "adjustment" upward for reasons included in the Guidelines, see U.S.S.G. § 1B1.1(c), § 1B1.1(d), such as obstruction of justice, id. § 3C1.1. They allow a "departure" upward for reasons not contemplated by the Guidelines. Id. § 5K2.0. If the district court intended to consider obstruction of justice in determining Cortez-Martinez's sentence, it should have proposed to "adjust upward," not "depart upward."
 
 
 24
 The court further confused the record by failing to state its reasons for imposing the final sentence. At the end of the hearing, the court stated that it found that the defendant had obstructed justice and had not accepted responsibility. It then stated that it would "depart[ ] upward" and announced the sentence. At that point, the defense counsel asked the court to specify the final offense level, and the prosecution counsel asked the court to state its findings. Only then did the court state that it found that Cortez-Martinez exercised control over the drop house and was involved in smuggling large numbers of aliens. Although we know that the court made four factual findings, we do not know how the court used two of the findings in determining the final sentence. We know that the district court found that the defendant obstructed justice and did not accept responsibility, which would result in a two-level upward adjustment. However, we cannot discern from the record the effect of finding that the defendant exercised control over the drop house (clearly erroneous) and that the offense involved a large number of aliens (not clearly erroneous).
 
 
 25
 In departing from the Guidelines, the sentencing court must state its reasons for the departure, and the sentence imposed must be reasonable in light of the articulated rationale. 18 U.S.C. § 3742(e), (f). Furthermore, "[w]hen reviewing the sentence, we must consider the reasons for the departure actually articulated by the sentencing court." United States v. Montenegro-Rojo, 908 F.2d 425, 427 (9th Cir.1990). This does not mean that we should "search the record for permissible reasons for departure; instead, we analyze the reasons actually given by the district court. These reasons must be sufficiently specific to allow this court to conduct a meaningful review." Id; see also United States v. Wells, 878 F.2d 1232, 1233 (9th Cir.1989) (district court must articulate the specific reasons for departure); Upshaw, 918 F.2d at 792 (district court "must make its resolution of all disputed matters clear on the record").
 
 
 26
 Where a sentencing court fails to articulate its reasons for departing from the Sentencing Guidelines, we must vacate and remand to the district court to set forth the reasons for its departure. Upshaw, 918 F.2d at 793; Wells, 878 F.2d at 1233; United States v. Michel, 876 F.2d 784 (9th Cir.1989). In the present case, the district court made four factual findings but did not explain how it used those findings to determine the defendant's sentence. Hence, we vacate the sentence and remand the case not only for a statement of reasons for departing, but also for a statement of the extent of each adjustment and departure.
 
 III. Breach of Plea Agreement
 
 27
 Cortez-Martinez also contends that the government breached the terms of his plea agreement and that the district court failed to develop the terms of the plea agreement. Because Cortez-Martinez did not present this issue to the district court, he may not raise it for the first time on appeal. United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991).
 
 CONCLUSION
 
 28
 The district court's factual findings, except the determination that the offense involved large numbers of aliens, were clearly erroneous. Furthermore, the district court failed to explain how it used its factual findings to determine the defendant's sentence. The sentence is REVERSED and the case REMANDED for resentencing. The only factor discussed herein that may be considered at the time of resentencing is the large number of aliens.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3