974 F.2d 1343
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Jackson CURRIE, Defendant-Appellant.
 No. 91-50088.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 17, 1992.
Decided Aug. 31, 1992.
 
 Appeal from the United States District Court for the Central District of California, No. CR-90-0549-DWW-1; David W. Williams, Senior District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before WILLIAM A. NORRIS, REINHARDT and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 David Jackson Currie appeals his conviction following a jury trial of two counts relating to his flying a stolen airplane into this country from Canada, in violation of 18 U.S.C. §§ 553 and 2312, and one count of making a false statement in order to obtain a pilot's license, in violation of 49 U.S.C.App. § 1472(b)(1)(B). Currie was sentenced to two consecutive prison terms--46 months on counts one and two, and 14 months on count three--followed by supervised release for a period of two years. He now challenges his conviction on the ground that hearsay evidence tending to impeach a government witness was improperly excluded. He challenges his sentence on legal and factual grounds. We affirm.
 
 
 3
 * Dean Freah worked as a dispatcher and charter pilot for Altair Aviation at an airport near Vancouver, Canada. According to Freah's testimony at trial, Currie attempted unsuccessfully to rent a single-engine airplane from Altair on February 28, 1990. Freah testified that Currie pleaded with the general manager for an hour in an effort to change her mind, stating that nobody else would rent him an aircraft. A day or two later, a similar aircraft parked near Altair Aviation was stolen. On March 6, 1990, Currie flew the stolen airplane into an airport at Upland, California. He and his passenger abandoned it there, driving off in a four-wheel drive vehicle. A police investigator examining the stolen plane noticed that its back cargo panel had been removed, which opened up the fuselage to increase the plane's payload.
 
 
 4
 On March 7, 1990, Currie applied for a temporary pilot's license at the Los Angeles office of the Federal Aviation Administration (FAA). He stated on his application that he had never held an FAA pilot's certificate, when in fact he had, but the certificate had been suspended. After receiving his temporary license, Currie rented another airplane in Van Nuys, California and flew south to Mexico, where U.S. Customs agents pursued and detained him. In the rental aircraft were fuel bladders containing 45 gallons of extra fuel, but no personal luggage. A customs dog alerted positively to the interior of the aircraft, suggesting drugs had previously been aboard. And a letter written by Currie and found unmailed on his person described "several air sorties" he had flown out of Los Angeles, and how he had lost $8,000 of a recent "pay-off" by hiding the money when so "stoned" that he could not later recollect where he had put it.
 
 
 5
 Currie signed a waiver of his Miranda warnings, then admitted to the customs agents that he had been on his way to pick up four tons of marijuana and that he had, on numerous previous occasions, imported cocaine and marijuana from Mexico into the United States and Canada. While Currie does not deny making these statements, he now describes them as "puffery."
 
 II
 
 6
 In addition to cooperating with U.S. authorities, Dean Freah gave a statement regarding the incident to Constable Helms of the Royal Canadian Mounted Police. Constable Helms is beyond the subpoena power of the United States courts and did not testify at trial. Counsel for the defense sought to introduce a defense investigator's testimony reporting what Constable Helms told him over the phone regarding the interview with Freah. According to the investigator, the Constable remembers Freah telling him that Currie reserved an airplane for February 28th but never appeared at the airfield that day to complete the rental. The decision of the district court not to admit the defense investigator's statement under the "catch all" exception to the hearsay rule is the subject of this appeal.
 
 
 7
 Federal Rule of Evidence 804(b)(5) allows hearsay evidence of statements made by an unavailable declarant only with substantial "circumstantial guarantees of trustworthiness." See, e.g., Johnson v. Pacific Lighting Land Co., 817 F.2d 601, 608 (9th Cir.), cert. denied, 484 U.S. 1062 (1987) (unsworn responses to a lawyer's questioning lack sufficient guarantees of trustworthiness). The defendant points to no such guarantees here. The rule also requires the proffered hearsay to be "more probative on the point for which it is offered than any other evidence which proponent can procure through reasonable efforts." Fed.R.Evid. 804(b)(5). Yet defense counsel apparently made no effort to introduce testimony from the general manager of Altair Aviation, who could have contradicted Freah's testimony if Freah was indeed mistaken that Currie had come to the airfield on February 28th. The defendant likewise failed to make the required showing that the proffered hearsay was more probative on that point than would have been the testimony of Altair's general manager. Thus the district court did not abuse its discretion in excluding the defense investigator's testimony.
 
 III
 
 8
 Currie challenges on several grounds the adequacy of the sentencing court's factual findings. We find these challenges lacking in merit.
 
 
 9
 First, Currie alleges a deprivation of due process and a violation of Federal Rule of Criminal Procedure 32(c)(3)(D) in the sentencing court's finding that his false statement to obtain a pilot's license was committed in connection with the attempted transportation of a controlled substance. This finding, based on the U.S. Customs Report of Investigation from El Paso, required the court to impose its sentence for count three of the indictment consecutively to its sentence under counts one and two. See 49 U.S.C.App. § 472(b)(2)(B). Currie's chief concern seems to be that the court accepted at face value his admission, contained in the Customs Report, that the purpose of his trip was to pick up four tons of marijuana for import into the United States. The court listed Currie's admission as one of several pieces of evidence tending to suggest that the pilot's license had been obtained in order to import drugs. The court specifically found the customs report to be reliable, which means it accepted that Currie had made the inculpatory statement. But at the suggestion of the Presentencing Report, the court did not enhance Currie's sentence based on the large quantity of drugs that he claimed to have been smuggling, since Currie's statements were the only evidence as to quantity. The Presentence Report, in other words, did not suggest that Currie's confession should be taken literally. Since Currie admits to having made the statement, we fail to see how either Rule 32(c)(3)(D) or constitutional due process requires additional findings of fact.
 
 
 10
 Second, Currie alleges that the district court failed to make factual findings sufficient to justify an upward departure in Currie's sentence, or to explain how these facts justified the extent of the departure as required by United States v. Lira-Barraza, 941 F.2d 745 (9th Cir.1991) (en banc). This allegation ignores that the court specifically found that Currie's criminal history score of II under the Sentencing Guidelines under-represented the seriousness of his criminal behavior, and that his Canadian rap sheet combined with other evidence of past criminality to justify a departure that would equate Currie's sentence with that of a Category IV defendant. We find this statement sufficiently specific to afford meaningful review. See United States v. Montenegro-Rojo, 908 F.2d 425, 428 (9th Cir.1990). Read in light of the Presentencing Report's careful and uncontroverted analysis of Currie's Canadian rap sheet, we believe it fully justifies both the existence and the extent of the departure.
 
 IV
 
 11
 The sentencing court found, based on the testimony of two deputy U.S. marshals, that Currie had attempted to intimidate and threaten a government witness. The marshals testified that one morning during the trial in this case, while Currie and a government witness against him were being transported together to the courthouse, Currie began shouting the informant's name and telling the other inmates that the man was a "rat" and a "snitch" who was going to testify against him. Currie acknowledges telling fellow inmates that Ira Poland was an informant, but denies that these statements constituted a threat. The court, however, found this behavior sufficiently threatening that it imposed a two-level increase in Currie's base offense level for obstructing justice. See United States Sentencing Commission, Guidelines Manual, § 3C1.1. We disagree with Currie that the court's findings of fact regarding this enhancement were insufficient. Nor do we find the determination clearly erroneous. See United States v. Christman, 894 F.2d 339, 342 (9th Cir.1990) (obstruction of justice finding reviewed for clear error).
 
 
 12
 The court found that Currie's statements were an attempt to obstruct justice with regard to all three of the counts against him. As a result, it imposed the two-level enhancement when figuring the base offense level for each of the three charges against him. In light of the requirement that Currie's sentence under count three be consecutive to his sentence under counts one and two, see 49 U.S.C.App. § 472(b)(2)(B), the effect of these independent calculations is to twice increase Currie's sentence for a single act of obstructing justice. The sentence under counts one and two and the sentence under count three were both increased because of Currie's attempt to intimidate Ira Poland. While Currie cites no authority for his objection to this procedure, the government points to § 5G1.2a of the Sentencing Guidelines as requiring it. Section 5G1.2a says that "[t]he sentence to be imposed on a count for which the statute mandates a consecutive sentence shall be determined and imposed independently." Under the terms of this provision, we see no way to avoid two consecutive enhancements, if the district court is right that Currie attempted to obstruct justice with regard to all three counts against him. Because Currie gives us no reason to believe that Ira Poland's testimony was not germane to all three counts, we decline to find this determination clearly erroneous.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3