UNITED STATES of America,
Plaintiff–Appellee,

v.

Lorenzo SOTO–OLIVAS, Defendant–
Appellant.

No. 93–50863.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1994.

Decided Jan. 5, 1995.

Jerome J. Haig, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Daniel P. Collins, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WIGGINS, KOZINSKI and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Lorenzo Soto–Olivas appeals his conviction for illegally reentering the United States after deportation, in violation of 8 U.S.C. § 1326(b)(2). He claims his prosecution was barred by the Double Jeopardy Clause. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

On May 21, 1990, Soto–Olivas was convicted of distributing cocaine base within 100 feet of a playground, in violation of 21 U.S.C. §§ 845(a) and 841(a)(1). He was sentenced to 36 months imprisonment, to be followed by six years of supervised release. As one of the conditions of his supervised release, the sentencing court ordered him to "comply with the rules and regulations of the [Immigration and Naturalization Service,] and if deported from this country under any circumstances, not to reenter the United States illegally."

Soto–Olivas was deported on February 25, 1992, after completing his prison term. On October 16, 1992, during his term of supervised release, he was arrested in Los Angeles County on auto theft charges. At a subsequent revocation hearing, he was sentenced to seven months imprisonment for violating the order for his supervised release that he not reenter the United States illegally.

On the day he was to be released from custody on the supervised release revocation, Soto–Olivas was indicted on the charge of illegally reentering the United States after deportation following conviction of an aggravated felony, in violation of 8 U.S.C. § 1326(b)(2). The indictment was based on the same illegal reentry which prompted revocation of his term of supervised release.

Soto–Olivas moved to dismiss the indictment. He argued the indictment violated his rights under the Double Jeopardy Clause because it subjected him to prosecution and punishment for the same act of illegal reentry upon which revocation of his supervised release was based. While this double jeopardy challenge was pending, he entered a conditional guilty plea to the indictment. The district court rejected his double jeopardy challenge and sentenced him to 70 months imprisonment, to be followed by three years of supervised release. In this appeal, Soto–Olivas renews his double jeopardy challenge.

II

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. "This protection applies both to successive punishments and to successive prosecutions for the same offense." *United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993).

■ Our prior case law establishes unambiguously that double jeopardy does not preclude criminal prosecution for conduct which also serves as the basis for a *parole* or *probation* revocation. *See, e.g., United States v. Redd,* 759 F.2d 699 (9th Cir.1985); *Standlee v. Rhay,* 557 F.2d 1303, 1304 (9th Cir.1977); *Bible v. Arizona,* 449 F.2d 111 (9th Cir.1971), *cert. denied,* 405 U.S. 994, 92 S.Ct. 1268, 31 L.Ed.2d 463 (1972). This is so because "revocation is not punishment for the subsequent events which violate the parole [or probation] and which may also constitute a separate crime." *Standlee v. Rhay,* 557 F.2d at 1306 (quoting *Standlee v. Smith,* 83 Wash.2d 405, 518 P.2d 721, 722 (1974)).

Confronted with this case law, Soto–Olivas argues revocation of supervised release, unlike parole or probation revocation, constitutes punishment for the act which causes the revocation, not for the original crime, and therefore triggers double jeopardy. He contends that in contrast to parole and proba-

tion, supervised release is imposed *in addition* to the original sentence, not instead of it. Therefore, he argues, any imprisonment resulting from a supervised release violation cannot be part of the original sentence (which is executed in full by completion of the prescribed prison term), but must be punishment for the new act constituting the violation.

In support of this argument, Soto–Olivas points out that a defendant's total term of imprisonment, together with any period of supervised release imposed, may actually exceed the maximum period of incarceration permitted by statute for his substantive crime. *United States v. Montenegro–Rojo,* 908 F.2d 425 (9th Cir.1990). As a consequence, violation of a condition of supervised release may result in imprisonment for a period exceeding the statutorily authorized maximum. *United States v. Purvis,* 940 F.2d 1276 (9th Cir.1991); *United States v. Mandarelli,* 982 F.2d 11 (1st Cir.1992).

■ We reject Soto–Olivas's argument. It misconstrues the nature and purpose of supervised release. As we explained in *Montenegro–Rojo,* when Congress enacted the supervised release statute it sought "to replace a parole system in which the length of post-incarceration supervision was dependent upon the length of the original prison term with a supervised release system in which the length of such supervision is dependent solely upon the defendant's need for supervision after release from jail." *Montenegro–Rojo,* 908 F.2d at 432. Under the old parole system:

> the anomalous situation could arise whereby a defendant in great need of post-incarceration supervision would get little whereas a defendant who did not need such supervision would get a great deal. Indeed, this disparity was almost assured by the parole system: better-behaved inmates, who presumably could handle life outside of prison on their own reasonably

well, left prison sooner than worse-behaved inmates, but as a consequence were supervised for longer periods on the outside. *Id.* at 433. With the new statute, Congress authorized courts to "tack a period of supervised release onto any term of imprisonment authorized by a substantive criminal statute, even a term near or at the maximum." *Id.* at 432.

■ By the plain language of the statute, supervised release, although imposed in addition to the period of incarceration, is "a part of the sentence." 18 U.S.C. § 3583(a); *see Montenegro–Rojo,* 908 F.2d at 432. Congress' primary objective in enacting § 3583 was to authorize a period of supervision, and perhaps imprisonment, beyond what is provided by the sentencing guidelines and substantive criminal laws. Thus, the entire sentence, including the period of supervised release, is the punishment for the original crime, and "it is the original sentence that is executed when the defendant is returned to prison after a violation of the terms" of his release. *United States v. Paskow,* 11 F.3d 873, 881 (9th Cir.1993).[1]

■ Indeed, because courts have wide discretion in fashioning a defendant's obligations during a term of supervised release, the act constituting a violation may not even be a crime. For example, courts may order defendants to support their dependents, work conscientiously at suitable employment, undergo medical or psychiatric treatment, or refrain from engaging in specified occupations. "If the individual may be punished for an action that is not of itself a crime, the rationale must be that the punishment is part of the sanction for the original conduct that was a crime." *United States v. Meeks,* 25 F.3d 1117, 1122 (2d Cir.1994).

### III

Soto–Olivas's reliance on our decision in *United States v. Schram,* 9 F.3d 741 (9th

---

1. The Sentencing Commission's commentary to the Sentencing Guidelines supports this interpretation. *See* United States Sentencing Commission Guidelines Manual, Chap. 7, Pt. A, § (3)(b) (choosing to treat violations as breaches of the court's trust, rather than as "new federal criminal conduct" and indicating that "the sentence imposed upon revocation is intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense").

Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993), is misplaced. In *Schram,* the defendant was sentenced to consecutive prison terms for violating the conditions of his supervised release and for the substantive crime which constituted the violation. We held the *Ex Post Facto* Clause was not violated when the defendant was required to serve his revoked supervised release term after completing his sentence for the substantive crime, even though the version of the Sentencing Guidelines authorizing imposition of consecutive sentences under these circumstances was not in effect on the date the defendant's supervised release was imposed. We based our decision on the view that "a violation of supervised release is, for purposes of determining the applicable version of the Sentencing Guidelines, an offense separate from the offense that led to the initial imprisonment and imposition of supervised release." 9 F.3d at 743. Therefore, we concluded, the new version of the Sentencing Guidelines was not "applied 'retroactively' because [it was] not applied to conduct completed prior to its enactment." *Id.*

The reach of *Schram* was limited by our decision in *United States v. Paskow,* 11 F.3d 873 (9th Cir.1993).[2] There, we held the *Ex Post Facto* Clause prohibited application of an amendment to § 3583, which imposed a mandatory minimum prison term for defendants who violate the terms of their supervised release by being in possession of a controlled substance, to a defendant who was originally sentenced before the effective date of the amendment. In doing so, we recognized that "revocation [of supervised release] and additional imprisonment[ ] are as much the consequence of the offender's underlying crime as is the initial term of imprisonment." *Id.* at 881 (quoting *United States v. Flora,* 810 F.Supp. 841, 843 (W.D.Ky.1993)). We specifically distinguished *Schram* on the ground that *Schram* "implicate[d] the relationship between the penalty for violation of supervised release and the penalty for a new or different offense committed while the defendant is on supervised release," while the amendment at issue in *Paskow* involved the

extent to which a violation of supervised release altered the penalty for the underlying crime. *Paskow,* 11 F.3d at 882–83, n. 12 (emphasis omitted).

■ Soto–Olivas argues *Paskow* is not controlling because it addressed the relationship between supervised release and the *Ex Post Facto* Clause, not the Double Jeopardy Clause. We disagree. Our case law is clear that for double jeopardy purposes, as well as *ex post facto* purposes, *parole* and *probation* revocations constitute punishment for the underlying crime. *See, e.g., Bible v. Arizona,* 449 F.2d 111 (9th Cir.1971). Consistent with this case law, we held in *United States v. Clark,* 984 F.2d 319 (9th Cir.1993), that the Double Jeopardy Clause was not violated when a defendant was ordered to serve consecutive sentences for violating the terms of both his supervised release and his probation, despite the fact that both violations resulted from the same conduct. We said that, "[a]lthough the violating act underlying revocation was the same in both cases, the punishment [in each case] was for the conduct underlying the original convictions." *Id.* at 321. Double jeopardy was not implicated because the defendant had not been punished even once for the conduct leading to revocation.

■ *Clark* makes clear that punishment imposed upon revocation of supervised release is punishment for the original crime, not punishment for the conduct leading to revocation, whether the analysis involves the *Ex Post Facto* Clause or the Double Jeopardy Clause. Nothing we said in *Paskow* refutes this.

### IV

Finally, we reject Soto–Olivas's contention that the Supreme Court's decision in *United States v. Dixon,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), mandates the conclusion that his criminal prosecution for violating 8 U.S.C. § 1326(b)(2), following revocation of his term of supervised release, violated the Double Jeopardy Clause.

---

**2.** We note that *United States v. Bermudez,* 974 F.2d 12, 13–14 (2d Cir.1992) (per curiam), on which *Schram* heavily relied, also has recently been limited by the Second Circuit. *See United States v. Meeks,* 25 F.3d 1117, 1123 (2d Cir. 1994).

*Dixon* is not a supervised release case. In *Dixon*, the defendant, a murder suspect, was released on bail subject to a court order that he not commit any further crimes. While out on bail awaiting trial on the murder charge, he was arrested and indicted for possession of cocaine with intent to distribute. He was convicted of criminal contempt of court on the ground that his possession of cocaine violated the terms of his bail release. The Supreme Court held this conviction precluded his subsequent prosecution on the cocaine possession charge because that prosecution would violate the Double Jeopardy Clause. *Id.* at ——, 113 S.Ct. at 2858.

■ Nothing in *Dixon* contradicts our holding in this case. A prosecution for criminal contempt, unlike revocation of supervised release, is punishment for the act constituting contempt of court, not for any underlying crime. Indeed, in Dixon's case, there was no underlying crime to punish. Dixon had not yet been tried or convicted on the murder charge and, therefore, was presumptively innocent of that crime. His contempt conviction punished his act of violating his bail release by possessing cocaine with intent to distribute, a new crime with no underlying offense. Double jeopardy precluded the government from punishing him again for the new crime. In contrast, revocation of Soto–Olivas's supervised release was punishment for his initial, underlying offense of distributing cocaine base within 100 feet of a playground.

If anything, *Dixon* supports our decision in this case. In reaching its holding in *Dixon*, the Supreme Court reasoned that criminal contempt is "a crime in the ordinary sense." *Id.* at ——, 113 S.Ct. at 2856. As a result, criminal contempt prosecutions are subject to all the procedural protections afforded other criminal trials. *Id.* Significantly, the Court expressly declined to comment on the applicability of the double jeopardy guarantee to summary contempt prosecutions, in which compliance with all the Constitution's procedural protections is not required. *Id.* at —— n. 1, 113 S.Ct. at 2856, n. 1.

■ In terms of procedural protections, supervised release revocation hearings are more akin to summary contempt prosecutions than to trials for criminal contempt. Proceedings to revoke supervised release, probation or parole need not comply with the procedural protections constitutionally guaranteed for criminal prosecutions. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation); *United States v. Meeks,* 25 F.3d 1117, 1123 (2d Cir.1994) (supervised release). For example, in proceedings to revoke supervised release the government must prove the alleged violation only by a preponderance of the evidence, not beyond a reasonable doubt, and there is no constitutionally guaranteed right to the assistance of counsel. *Meeks,* 25 F.3d at 1123. *See also United States v. Arzate–Nunez,* 18 F.3d 730 (9th Cir.1994) (explaining the procedural differences between a prosecution for illegal reentry and a supervised release revocation hearing); *United States v. Stephenson,* 928 F.2d 728, 732 (6th Cir.1991) (detailing the lowered evidentiary standards, including the admissibility of hearsay, at supervised release revocation hearings).

The limited procedural protections afforded these proceedings are justified precisely because revocation of supervised release is not new punishment for a new crime. It is "part of the whole matrix of punishment which arises out of a defendant's original crime[ ]," of which the defendant has already been convicted after a trial subject to the full panoply of constitutional guarantees. *Paskow,* 11 F.3d at 883.

V

■ We hold Soto–Olivas's rights under the Double Jeopardy Clause were not violated by his prosecution for illegally reentering the United States in violation of 8 U.S.C. § 1326(b)(2), even though this reentry resulted in revocation of his term of supervised release which was imposed as punishment for his earlier offense of distribution of cocaine base within 100 feet of a playground, in violation of 21 U.S.C. §§ 845(a) and 841(a)(1).

AFFIRMED.