62 F.3d 1425
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon CASTRO-VEGA, Defendant-Appellant.
 Nos. 94-50513, 94-50514.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1995.*
Decided Aug. 8, 1995.
 
 Before: LAY,** BRUNETTI and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Ramon Castro-Vega appeals his conviction by guilty plea of conspiracy to import marijuana in violation of 21 U.S.C. Secs. 952, 960, and 963; importation of marijuana in violation of 21 U.S.C. Secs. 952 and 960; conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. Secs. 841(a)(1) and 846; and possession with intent to distribute marijuana in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. He also appeals the revocation of his supervised release from a prior conviction based on admission to the same conduct giving rise to the guilty-plea conviction. We affirm.
 
 I.
 
 3
 The district court was not improperly involved in settlement negotiations between Castro-Vega and the Government in violation of Fed. R. Crim. P. 11(e)(1), which provides that the government and a defendant may engage in plea negotiations, but "[t]he court shall not participate in any such discussions." Castro-Vega claims the district court was improperly involved in the settlement negotiations because the court encouraged Castro-Vega and his wife, who was charged with the same offense, to continue plea negotiations and because the Government informed the district court of the recommendations of the judge who presided over the settlement negotiations.[1] We disagree.
 
 
 4
 Castro-Vega relies on this Court's decision in United States v. Bruce, 976 F.2d 552, 554 (9th Cir. 1992). In Bruce, the district court exerted pressure on the defendants to accept a plea agreement, and this Court reversed, finding a violation of Fed. R. Crim. P. 11(e)(1). Bruce is inapposite here because Castro-Vega did not enter into a plea agreement with the Government, and thus it cannot be argued that he was coerced into accepting one.
 
 
 5
 The district court did not violate Fed. R. Crim. P. 11(e)(1) by encouraging Castro-Vega and his wife to continue plea negotiations. The record reflects that the court encouraged them to continue plea negotiations only after defense counsel indicated a desire to continue the negotiations.[2] The fact that the court encouraged the parties to return to the settlement judge after defense counsel expressed a desire to do so does not amount to improper involvement in the plea negotiations.
 
 
 6
 In addition, the Government's communication of the recommendations of the settlement judge to the district court during the sentencing hearing did not violate Fed. R. Crim. P. 11(e)(1). The plea negotiations were long over before the court was informed of the substance of those negotiations. See United States v. Frank, 36 F.3d 898, 902 (9th Cir. 1994) (finding no Rule 11 violation where the judge "was not trying to shape the agreement or persuade either side to accept it"); United States v. Torres, 999 F.2d 376, 378 (9th Cir. 1993) (finding no Rule 11 violation in comment made by sentencing judge after "[t]he parties had already hammered out their [plea] agreement"). Castro-Vega's claim that the district court interfered in the negotiations because it became aware of the substance of those negotiations after their completion is without merit.[3]
 
 II.
 
 7
 We find nothing in the record to support Castro-Vega's claim that his guilty plea was involuntary because he only entered the plea to benefit his wife, who was still negotiating with the Government. Castro-Vega makes no claim that the Government promised not to prosecute his wife if he pled guilty or threatened to prosecute his wife if he did not. Moreover, the record shows that the court engaged Castro-Vega in an extensive colloquy to determine the voluntariness of his plea, and Castro-Vega insisted that he was pleading guilty because he was in fact guilty. See Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir. 1986) ("In assessing the voluntariness of the plea, statements made by a criminal defendant contemporaneously with his plea should be accorded great weight."). The court also made special inquiry as to whether Castro-Vega was pleading guilty only to exonerate his wife. ER 32. Both Castro-Vega and his attorney responded that he was pleading guilty because he was guilty, although defense counsel noted that Castro-Vega also wanted "to bring to everybody's attention that his wife was not involved ...." Id. At the sentencing hearing, Castro-Vega's attorney explained that Castro-Vega pled guilty to obtain a reduction in his sentence for acceptance of responsibility because he had "no legally appropriate defense" to the charges against him. ER 39. For the foregoing reasons, it appears from the totality of the record that Castro-Vega's plea was voluntary.[4]
 
 III.
 
 8
 Finally, the district court did not violate Castro-Vega's right to due process in revoking his supervised release for a prior offense.[5] Castro-Vega appeared before a magistrate judge on April 12, 1994 pursuant to the court's order to show cause why his supervised release should not be revoked. At that time, a magistrate judge informed Castro-Vega of the charges against him and that he had a right to a hearing before the district court. The magistrate judge also told Castro-Vega that at that hearing, he had the right to force the Government to prove the charges against him, the right to confront and cross-examine witnesses against him, the right to put on a defense, and that if he could not afford an attorney, one would be appointed for him. Thus, Castro-Vega had adequate notice of the charges against him and his rights during the revocation hearing.
 
 
 9
 At the revocation hearing, Castro-Vega admitted to violating the terms of his supervised release. Castro-Vega claims that it was a violation of due process for the district court to accept his admission without engaging him in a colloquy to ensure the voluntariness of his admission. He cites no case for that proposition, and we find no mention of such a requirement in Fed. R. Crim. P. 32.1(a) or in Morrissey. This Court has emphasized that "[p]roceedings to revoke supervised release, probation or parole need not comply with the procedural protections constitutionally guaranteed for criminal prosecutions." United States v. Soto-Olivas, 44 F.3d 788, 792 (9th Cir.), cert. denied, 115 S. Ct. 2289 (1995). "The limited procedural protections afforded these proceedings are justified precisely because revocation of supervised release is not new punishment for a new crime." Id. The district court did not violate Castro-Vega's due process rights by failing to engage him in a colloquy to determine the voluntariness of his admission. Cf. United States v. Garcia, 771 F.2d 1369, 1371-72 (9th Cir. 1985) (finding no due process violation in revocation of probation based on state court guilty-plea conviction obtained without guarantee of its voluntariness). Moreover, Castro-Vega, just moments after admitting the violation of his supervised release, appeared before another judge and pled guilty to the same conduct that gave rise to the revocation of the supervised release. As discussed, that judge engaged Castro-Vega in an extensive colloquy to determine the voluntariness of that plea.
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The Government told the court during the plea hearing that it intended to inform the court of the settlement judge's recommendations. The Government then included those recommendations in its sentencing memorandum and discussed the settlement judge's recommendations at the sentencing hearing. At the sentencing hearing, the Government stated as follows:
 The settlement judge recommended two levels upward adjustment based on this defendant's history, and also because of the fact that the defendant recruited and used his wife in this case. We are not asking for that adjustment, but that is one of the reasons why the defendant decided not to have any agreement with the government.
 ER 38. Defense counsel immediately asked the court "not [to] take into consideration the observations of the settlement judge because we never took advantage of anything that had to do with the settlement judge." Id.
 
 
 [2]
 Castro-Vega's lawyer stated, "I really think this case would profit by going back to the settlement judge." ER 9. The court responded, "I don't want to consider what negotiations have been going on." Id. Counsel for Castro-Vega's wife then remarked that at a previous settlement conference at which he was not present, "there was an understanding, a meeting of the minds with the Government, and I want to go back and see if that meeting of the minds can be reenacted." Id. The court then stated that it "urged" the parties to go back to the settlement judge. ER 10
 
 
 [3]
 The Government admits that it violated the United States District Court for the Southern District of California's General Order 400 by communicating the recommendations of the settlement judge to the district court. The Government did not argue to the court that it should impose a two-level upward adjustment as the settlement judge suggested, however, but instead requested that Castro-Vega be sentenced at the high end of the guideline range that the parties had already agreed upon. The court did not sentence Castro-Vega at the high end of his range, but rather sentenced him to twenty-seven months, at the middle of his range. Thus, Castro-Vega was not prejudiced by the violation of the order
 
 
 [4]
 The Government has moved to augment the record on appeal to include the plea agreement between Castro-Vega's wife and the Government. We deny the motion because we find that agreement irrelevant and unnecessary to our decision
 
 
 [5]
 In Morrissey v. Brewer, 408 U.S. 471, 485-89 (1972), the Supreme Court set out the minimum due process requirements for parole revocation. Fed. R. Crim. P. 32.1(a) incorporates these same minimal due process requirements. Rule 32.1(a) requires a preliminary hearing to determine whether there is probable cause to believe the defendant violated the terms of his probation or supervised release. If such probable cause is found, the defendant is entitled to a revocation hearing within a reasonable period of time. The defendant must be given 1) written notice of the alleged violation; 2) disclosure of the evidence against the defendant; 3) an opportunity to appear and present evidence; 4) the opportunity to question adverse witnesses; and 5) notice of the defendant's right to be represented by counsel. Fed. R. Crim. P. 32.1(a)(2)